Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/17/2016 09:10 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
BYRON WILKINSON, JR., APPELLANT.
___ N.W.2d ___

Filed June 17, 2016.    No. S-15-1002.

1. **Judgments: Appeal and Error.** When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
2. **Pleas: Appeal and Error.** A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion.
3. **Indictments and Informations: Appeal and Error.** An information that was unchallenged in the trial court must be held sufficient on appeal unless it is so defective that by no construction can it be said to charge the offense for which the accused was convicted.
4. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.
5. **Pleas.** A plea of no contest is equivalent to a plea of guilty.
6. **____.** To support a plea of guilty or no contest, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged.
7. **Pleas: Effectiveness of Counsel.** When a court accepts a defendant's plea of guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.
8. **Pleas.** A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily.
9. **Criminal Law: Intent: Public Officers and Employees.** The mens rea of obstructing government operations is an intent to frustrate a public servant in the performance of a specific function.
10. **Indictments and Informations: Complaints: Waiver: Pleas: Jurisdiction.** A defect in the manner of charging an offense is waived

if, upon being arraigned, the defendant pleads not guilty and proceeds to trial, provided the information or complaint contains no jurisdictional defect and is sufficient to charge an offense under the law.

11. **Indictments and Informations.** The function of an information is twofold: With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.

12. **Indictments and Informations: Due Process.** Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is normally sufficient. However, when the charging of a crime in the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process.

13. **Indictments and Informations.** It is a general rule of criminal procedure that, when under a statute an offense may be committed by several methods, the indictment or information may charge that it was committed by any or all such methods as are not inconsistent with, or repugnant to, each other.

14. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime.

Appeal from the District Court for Cheyenne County, TRAVIS P. O'GORMAN, Judge, on appeal thereto from the County Court for Cheyenne County, PAUL G. WESS, Judge. Judgment of District Court affirmed.

Thomas M. Sonntag, of Sonntag, Goodwin & Leef, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Kelch, JJ.

Heavican, C.J.

## NATURE OF CASE

Byron Wilkinson, Jr., appeals from the district court's order affirming his conviction and sentence for obstructing government operations in violation of Neb. Rev. Stat. § 28-901 (Reissue 2008). The State alleges that Wilkinson interfered with the prosecution of a city employee in order to prevent that employee from being fired. Wilkinson pleaded no contest, and the county court sentenced him to 30 days in jail, plus court costs. Wilkinson appealed, and the district court affirmed. Wilkinson appealed again, and we moved the case pursuant to our power to regulate our docket and that of the Nebraska Court of Appeals. We now affirm Wilkinson's conviction and sentence.

## BACKGROUND

According to the factual basis provided by the State below, on January 29, 2014, police in Sidney, Nebraska, received a telephone call from a woman complaining that a man had been standing outside her bedroom window observing her as she wore only underwear. She believed the man was her exboyfriend, John Hehnke, the public works director for Sidney. Officer Tim Craig responded to the call and found partial shoeprints outside the window. Craig went to Hehnke's residence, where, after questioning, Hehnke admitted to looking into the woman's window. Craig issued Hehnke a citation for disturbing the peace, which Hehnke signed.

Under Neb. Rev. Stat. § 29-424 (Reissue 2008), "[a]s soon as practicable, the copy [of a citation that is] signed by the person cited shall be delivered to the prosecuting attorney." But before Hehnke's citation could be delivered to the Cheyenne County Attorney, Wilkinson, who was the chief of the Sidney

Police Department, pulled it from the packet of citations to be delivered.

When Craig asked about the missing citation, Wilkinson replied with the following e-mail:

"There is no secret that the major [sic] and I became actively involved in that for a number of reasons. The most significant of these are political and perhaps my least favorite issues to become entangled with. There is no clear solution that will keep everyone happy and satisfy all the interests in play. [Hehnke] is a key player in the administration of the city. His presence and ability will be critical to what we are about to undertake and many projects will be compromised if he were out of action. There is a very good chance that if [Hehnke] was formally charged in this incident, thus making formal charges public, he would be relieved of duty and terminated from employment. Against my better judgment and knowing that knowing [sic] would have ramifications, I pulled the paperwork in the best interests of the health of the city long-term, and documented the conversations and what ramifications a violation on [Hehnke's] part would be."

The record contains no indication of what type of administrative repercussions Hehnke may have faced in lieu of formal prosecution. The State filed its initial complaint on April 13, 2015, more than 14 months after the citation against Hehnke was first issued. Wilkinson had apparently retained possession of the citation until that time.

Before the county court, Wilkinson stated that Hehnke "was in charge of several million dollars' worth of street improvement projects. . . . The concern was that if this matter came to the light of day, involving . . . Hehnke, that . . . Hehnke would lose his job and those infrastructure projects would all be placed in jeopardy." Wilkinson had previously stated in an interview with law enforcement that he viewed the citation as "'a misdemeanor, chicken-shit disturbing the peace ticket that

[Wilkinson] helped keep it from becoming exposed to someone who was after him.'"

Wilkinson initially pleaded not guilty, but then changed his plea to no contest. Wilkinson never moved to quash the amended complaint, which mostly mirrored the language of § 28-901. The county court found Wilkinson guilty, sentenced him to 30 days in county jail, and ordered him to pay $55.48 in court costs. Wilkinson appealed, and the district court affirmed. He appealed again, and we moved the case pursuant to our power to regulate our docket and that of the Court of Appeals.

## ASSIGNMENTS OF ERROR

Wilkinson assigns that the district court erred by (1) affirming the county court's finding that there was a sufficient factual basis to support the conviction, (2) finding that the amended complaint was adequate, and (3) finding that the sentence imposed was not excessive.

## STANDARD OF REVIEW

[1] When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[1]

[2] A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion.[2]

[3] An information that was unchallenged in the trial court must be held sufficient on appeal unless it is so defective that by no construction can it be said to charge the offense for which the accused was convicted.[3]

---

[1] *State v. Landera*, 285 Neb. 243, 826 N.W.2d 570 (2013).

[2] *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004).

[3] *State v. Golgert*, 223 Neb. 950, 395 N.W.2d 520 (1986).

[4] An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.[4]

## ANALYSIS

*Factual Basis for Plea.*

In Wilkinson's first assignment of error, he argues that the district court erred by accepting his no contest plea, because it was not supported by a sufficient factual basis. Wilkinson asks the court to rule that the power of "immediate superintendence of the police," conferred upon a chief of police by Neb. Rev. Stat. § 16-323 (Reissue 2012), authorized him to choose, for political reasons, not to forward citations to the county attorney's office. We do not find that a chief of police has such authority under the facts of this case.

[5-8] A plea of no contest is equivalent to a plea of guilty.[5] To support a plea of guilty or no contest, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged.[6] When a court accepts a defendant's plea of guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.[7] A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily.[8] Therefore, Wilkinson has not waived his challenge to the factual basis.

To ascertain whether the State's factual basis was sufficient, we must identify the elements of the statute under

---

[4] *State v. Duncan*, 291 Neb. 1003, 870 N.W.2d 422 (2015).

[5] *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010).

[6] See *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011).

[7] *State v. Bazer*, 276 Neb. 7, 751 N.W.2d 619 (2008).

[8] See *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

which Wilkinson was convicted and determine whether the factual basis meets those elements.[9] Under § 28-901(1), which Wilkinson was convicted of violating,

> [a] person commits the offense of obstructing government operations if he intentionally obstructs, impairs, or perverts the administration of law or other governmental functions by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

Therefore, as relevant to the State's amended complaint, we must determine whether Wilkinson's act of removing Hehnke's citation was (1) an intentional act (2) obstructing, impairing, or perverting the administration of law or governmental function (3) by either physical force or obstacle, breach of an official duty, or any other unlawful act. Wilkinson appears to take issue with each of these three elements on appeal.

We first take up Wilkinson's argument as to the third element—the manner of act required—because his appeal focuses primarily on this point. The State asserts that Wilkinson breached an official duty by preventing the delivery of Hehnke's citation to the county attorney as required by § 29-424. Section 29-424, which sets forth procedures for issuing citations, states in relevant part, "As soon as practicable, the copy [of a citation that is] signed by the person cited shall be delivered to the prosecuting attorney."

Wilkinson asserts that his act was not a breach of § 29-424, because, as chief of police, he had broad discretion over all

---

9 See, e.g., *State v. Kennedy*, 251 Neb. 337, 557 N.W.2d 33 (1996); *State v. Johnson*, 242 Neb. 924, 497 N.W.2d 28 (1993); *State v. Glover*, 236 Neb. 402, 461 N.W.2d 410 (1990).

operations of the Sidney Police Department. He essentially argues that because police have a duty to "'preserve the public peace and to protect the lives and property of the citizens of the public in general,'"[10] the term "as soon as practicable" permits the chief of police to halt the delivery of any citation for any reason. But he cites only § 16-323 for this proposition, which statute does not authorize a chief of police to do so. Reading "immediate superintendence" in this manner is simply untenable. When questioned during oral arguments about from whence this power stems, Wilkinson was unable to identify any other source in law. Wilkinson asserts that a chief of police must have the discretion to prevent delivery of citations in order to guard citizens from abuses by officers who issue those citations.

On these facts, we disagree. We note that nothing in the record suggests that Craig was harassing or abusing Hehnke. To the contrary, Hehnke admitted committing the violation and was eventually prosecuted. Further, to the extent that a chief of police may have some discretion over the issuing of citations—a matter we decline to decide—we are certain that the facts of this case do not fall within the scope of that theoretical discretion. According to the factual basis provided by the State, which Wilkinson does not dispute, Wilkinson was motivated to prevent prosecution of Hehnke so that Hehnke could continue working as Sidney's public works director. Try as he may to paint this motive as benevolent, nothing can mask the politically driven, unethical nature of Wilkinson's behavior. Wilkinson's duty to preserve the public peace does not endow him with the unilateral power to determine that persons in political power should be immune from prosecution by mere fact of their office.

Therefore, we find that Wilkinson's actions were not justified by his position as chief of police. The factual basis

---

[10] See *State v. Wilen*, 4 Neb. App. 132, 141-42, 539 N.W.2d 650, 658 (1995).

establishes that Wilkinson breached his official duty under § 29-424.

With the third element of obstruction of government operations established, we now turn to the second element: obstruction, impairment, or perversion of the administration of law or governmental function.

Wilkinson argues that he did not obstruct or impair any governmental function or the administration of law, because no public servant was engaged in a governmental function concerning the citation; Craig had completed his investigation, and the county attorney had not yet obtained the citation for prosecution. Therefore, Wilkinson claims, the citation remained under his control and no governmental function was obstructed, impaired, or perverted.

We disagree. As noted, § 29-424 required delivery of the citation to the county attorney "as soon as practicable." The plain meaning of "practicable" is "capable of being put into practice or of being done or accomplished" or "feasible."[11] Thus, the Sidney Police Department was entitled to control the citation only until it was feasible to deliver the citation to the county attorney. As discussed above, the facts of this case do not justify the delay Wilkinson caused to that delivery. By interfering with the delivery of the citation, Wilkinson impaired the county attorney's prosecutorial functions.

Wilkinson also argues that the second element of obstructing governmental functions was not met, because Hehnke was eventually prosecuted. Wilkinson reasons that he did not obstruct or impair any functions, because there was a period of almost 4 months remaining of the statute of limitations to prosecute Hehnke's citation at the time the amended complaint was filed against Wilkinson. In other words, in light of the fact that Wilkinson was caught violating the law and his wrong corrected, Wilkinson urges us to take a "no harm, no foul" view of his behavior.

---

[11] Merriam-Webster's Collegiate Dictionary 912 (10th ed. 2001).

There is no doubt that Wilkinson actually obstructed, impaired, or perverted the governmental function of prosecuting Hehnke's citation. Wilkinson acknowledges that at the time he removed the citation from the package to be delivered, he did not intend to ever deliver the citation. Instead, he claims that he sought "administrative sanctions"—which he has not defined, has not cited authority for, and has not shown in the record. We will not retroactively declare that his actions, which he intended to have a permanent obstructing effect, were innocent merely because his obstruction was discovered in time to pursue charges against Hehnke.

[9] Finally, Wilkinson implies that the first element of obstruction, intent, was not met. He asserts that his intent was not to impair the administration of justice, but only to serve the community. But we have held that "'"[t]he mens rea of this crime is an intent to frustrate a public servant in the performance of a specific function."'"[12] Wilkinson's alleged ultimate goal of helping the city of Sidney is irrelevant; he intentionally interfered with the delivery of the citation. Therefore, the State showed a factual basis for the first element of obstructing government operations.

For these reasons, we agree with the district court that there was sufficient factual basis to support Wilkinson's conviction. Wilkinson's first assignment of error is without merit.

*Adequacy of Amended Complaint.*

In Wilkinson's second assignment of error, he challenges the adequacy of the amended complaint to inform him of the crimes with which he was charged. We find that the complaint was sufficient to charge the crime for which Wilkinson was convicted.

The only count contained in the amended complaint read, "[O]n or about the 30th day of January, 2014, [Wilkinson] did intentionally obstruct, impair, or pervert the administration of

---

[12] *State v. Stolen*, 276 Neb. 548, 557, 755 N.W.2d 596, 603 (2008).

law or other governmental functions by physical interference or obstacle, breach of official duty or any other unlawful act."

[10] The State asserts that Wilkinson has waived this argument. The State argues that because Wilkinson first pleaded not guilty, he waived any objection that might have been raised in a motion to quash the amended complaint. However, the State's argument fails. The State correctly argues that "[a] defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads not guilty and proceeds to trial, *provided the information or complaint* contains no jurisdictional defect and *is sufficient to charge an offense under the law*."[13] But Wilkinson now contends that the complaint was not sufficient, an argument which, under the statement of law cited by the State, is not waived. Therefore, we will consider the merits of Wilkinson's second assignment of error.

[11,12] The function of an information is twofold: With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.[14] Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is normally sufficient. However, when the charging of a crime in the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process.[15]

---

[13] See *State v. Smith*, 269 Neb. 773, 786, 696 N.W.2d 871, 884 (2005) (emphasis supplied).

[14] *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

[15] See *id.*

The language of the amended complaint essentially follows the language of § 28-901. But Wilkinson asserts that it was nonetheless insufficient. Because the statute lists three underlying actions that might trigger a violation—"force, violence, physical interference or obstacle[;] breach of official duty[;] or any other unlawful act"—Wilkinson argues that the State was required to specify the action of which Wilkinson stood accused.

[13] This case is analogous to *State v. Bowen*.[16] In *Bowen*, we considered the adequacy of an information charging a defendant with first degree murder committed either intentionally or while in the course of a felony. Though the State presented evidence only of the felony murder theory, we held that the information did not violate the defendant's right to notice. "'It is a general rule of criminal procedure,'" we noted, "'that, when under a statute an offense may be committed by several methods, the indictment or information may charge that it was committed by any or all such methods as are not inconsistent with, or repugnant to, each other.'"[17]

Thus, as in *Bowen*, the amended complaint against Wilkinson was sufficient to give him notice of the crime charged. Though § 28-901 contains three methods by which a person might obstruct government operations, including all three methods in a charging instrument does not render notice to the defendant insufficient. Our decision is also supported by our standard of review in this matter, which requires us to hold the complaint sufficient unless it is so defective that by no construction can it be said to charge the offense for which Wilkinson was convicted.[18] Wilkinson's second assignment of error is without merit.

---

[16] *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993).

[17] *Id.* at 210, 505 N.W.2d at 687 (quoting *Brown v. State*, 107 Neb. 120, 185 N.W. 344 (1921)).

[18] See *Golgert, supra* note 3.

*Excessiveness of Sentence.*

Finally, in Wilkinson's third assignment of error, he argues that the district court erred by finding that Wilkinson's sentence was not excessive. We affirm the district court's finding.

[14] An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.[19] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime.[20]

Wilkinson essentially argues that the district court, in reviewing the county court's sentence, did not give sufficient weight to mitigating factors. He argues that he is entitled to a reduced sentence because of his relationship with his daughter, his military service record, his history of public service in law enforcement, and his allegedly benevolent motive for obstructing government operations.

However, the county court did consider these facts. During the plea and sentencing proceeding, Wilkinson raised each of these facts before the county court. The county court then ruled from the bench and listed its reasons for imposing a 30-day sentence plus court costs:

> The difficulty with a sentencing in this sort of case is there is absolutely no question about your lack of criminal history. Your service history is commendable.
>
>     . . . .
>     . . . Which makes a sentence of probation for you to really be like no consequence at all. Because I'm

---

[19] *Duncan, supra* note 4.

[20] *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

convinced you'll be a law-abiding citizen from here on out . . . .

. . . .

. . . And I think the imposition of a fine would be inappropriate and promote disrespect for the law. . . . [G]iven your prior service history, lack of any prior criminal history, I think that a 30-day sentence is appropriate. But I think any other sentence, given your position of trust, would promote disrespect for the law.

Under these circumstances, and considering that the statutory maximum sentence of 1 year's imprisonment[21] is well above the 30 days imposed, we find that the district court correctly held that the county court did not abuse its discretion. It properly considered factors relevant to sentencing and made its decision based upon sound reasoning.

Wilkinson's third assignment of error is without merit.

## CONCLUSION

We affirm the decision of the district court, affirming Wilkinson's conviction and sentence.

Affirmed.

Stacy, J., participating on briefs.

---

[21] Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014).