IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. SIMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

COURVOISIER V. SIMS, APPELLANT.

Filed December 11, 2018.    No. A-17-994.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Stuart J. Dornan and Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Courvoisier V. Sims appeals his plea-based convictions and sentences for two counts of second degree murder and use of a weapon to commit a felony. He claims his plea was not entered knowingly, intelligently, voluntarily, and understandingly and was without a factual basis. He also claims that his sentences are excessive and that his trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm Sims' convictions and sentences.

### BACKGROUND

The State filed an information on January 8, 2016, charging Sims with two counts of first degree murder, Class IA felonies, and two counts of use of a deadly weapon (firearm) to commit a felony, Class IC felonies. On August 5, Sims filed a motion to transfer the case to juvenile court. Following a hearing on the motion to transfer, the district court denied the motion.

- 1 -

A plea agreement was reached where the State agreed to reduce the charges to two counts of second degree murder, Class IB felonies, and one count of use of a deadly weapon (firearm) to commit a felony, a Class IC felony, in exchange for Sims entering guilty pleas to those charges. An amended information was filed on July 18, 2017, to reflect the plea agreement.

At the plea hearing, the State provided the following factual basis:

On or about December 9, 2015, law enforcement received a 911 call at approximately 3:03 p.m. regarding gunshots at an apartment complex in Douglas County, Nebraska. When law enforcement responded, they found a blue Ford Explorer in the parking lot of the apartment complex. James Star and Brandon Phelps were in the car and both were dead. Star was in the driver's seat, and Phelps in the passenger seat. Autopsies performed on Star and Phelps showed they both died of gunshot wounds. Star had three gunshot wounds to his head and one to his side, and Phelps had one gunshot wound to his head. Law enforcement received a tip that Sims was the shooter and they began an investigation.

Sims was on juvenile probation at the time and law enforcement obtained his global positioning system (GPS) tracker results which showed directly before or at the time of the 911 call, Sims had been at the apartment complex; the GPS showed him leaving the scene at an increased rapid speed, indicating he was in a vehicle. The vehicle then went to a specific address on Jaynes Street. Officers located two firearms, a .45 and a 9 millimeter, at the residence located at the Jaynes Street address. Both firearms were consistent with evidence found at the crime scene, including the wounds to the victims as well as the casings found in the car. Martin Anderson and Warren Anderson were interviewed as potential suspects, and police found they were with Sims immediately before and immediately after the homicide. Martin and Warren reported that before the incident they went to Sims' residence and he told them he was going to purchase a firearm from the victims. Martin's GPS tracker, as well as Sims' GPS tracker, were consistent with the facts provided by Martin and Warren. Sims walked to the apartment complex, came back, got in the car, and went to the Jaynes Street address. Both Martin and Warren stated they saw apparent blood on Sims and that he admitted to shooting the victims, and they saw Sims with firearms immediately after the homicide. There was also a report that they previously saw Sims with a .45 gun consistent with the gun found later that day. DNA tests were performed on Sims' shoes found at his residence and the tests revealed that Star's DNA was on Sims' shoe. All these events took place in Douglas County, Nebraska.

Sims entered a guilty plea to the charges in the amended information. The trial court asked Sims if he agreed that if a trial was held, the State's witnesses would tell the trial court what the State had said they would, and Sims agreed. Sims' counsel then added that the witnesses would also state that Sims told Martin and Warren after the incident that he went there to buy a gun, but that when he got there Star pulled a gun on him and said Sims was not leaving with a gun or with his money, and that was when Sims fired at the victims. Sims' counsel also stated that the gunshot wound to Star's thigh was caused by Star discharging his own firearm. Sims' counsel, upon questioning by the trial court, confirmed that he thought the facts were sufficient to justify and support verdicts of guilty against Sims for second degree murder.

The trial court found Sims understood the nature of the three charges, as well as the possible penalties, found the pleas of guilty were made freely, knowingly, intelligently, and voluntarily,

and that there was a factual basis to justify and support the three charges and Sims' guilty pleas to the charges. The trial court accepted Sims' pleas, found him guilty of all three charges, and ordered a presentence investigation report (PSI).

At the sentencing hearing, the trial court sentenced Sims to 30 to 50 years' imprisonment on each conviction of second degree murder, and ordered the sentences to be served consecutively. For his use of a deadly weapon (firearm) to commit a felony conviction, the trial court sentenced Sims to 10 to 20 years' imprisonment. The trial court noted that by law, that sentence must run consecutive to any other sentence given, so it was ordered to be served consecutive to the sentences for second degree murder. Sims was given credit for 628 days served.

## ASSIGNMENTS OF ERROR

Sims argues that his plea was not knowingly, intelligently, voluntarily, and understandingly made and was without a factual basis. He also argues that his sentences are excessive and that his trial counsel was ineffective.

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017).

## ANALYSIS

*Voluntariness of Plea.*

Sims first argues that his plea was not made freely, intelligently, voluntarily, and understandingly. A guilty plea must be knowingly and voluntarily entered because the plea involves the waiver of certain constitutional rights. *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004). To support a finding that a plea of guilty has been entered freely, intelligently, voluntarily, and understandingly, a court must inform the defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *Id.* The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id.*

Sims first argues that his plea was not knowingly and voluntarily made because he was not informed that he had a right to compel witnesses on his behalf. This right is not one of the rights of which a defendant must be specifically informed of by the court prior to entering a plea. However, even if it were, the trial court informed Sims that he had "the right to call witnesses to give evidence on [his] behalf," or in other words, to compel witnesses on his behalf.

Sims next argues that his plea was not knowingly and voluntarily made because he was not advised by the trial court that a guilty plea would waive his right to appeal the denial of his motion to transfer to juvenile court. However, the Nebraska Supreme Court has stated that a guilty plea following the denial of a motion to waive jurisdiction to the juvenile court does not preclude a challenge to such action on appeal. *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994). Therefore, Sims did not waive his right to appeal the denial of his motion to transfer to juvenile court by pleading guilty.

We note that Neb. Rev. Stat. § 29-1816 (Supp. 2017) was amended in 2017 to provide for an interlocutory appeal of a denial of a motion to transfer to juvenile court. However, the change took effect on August 24, 2017, and the order denying Sims' motion to transfer was filed on June 14. Therefore, Sims was not able to file an interlocutory appeal of the denial of his motion to transfer.

Based on the record before us, Sims was informed of the nature of the charges, the constitutional rights that the court was required to inform him of, and the range of penalties. He indicated that he understood all the information he received. Therefore, Sims' first two arguments in support of his contention that his plea was not freely, intelligently, voluntarily, and understandingly made are without merit.

Sims also argues that his plea was not freely, intelligently, voluntarily, and understandingly made because it was not supported by a sufficient factual basis. He contends that the factual basis offered supports a conviction for manslaughter, and not second degree murder.

The factual basis for a plea may be determined by inquiry of the defendant or county attorney, or by examination of the presentence investigation. *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985). Both the statement of the deputy county attorney and the information contained in the PSI established a factual basis for the second degree murder charges.

To support the charge of second degree murder, the factual basis had to show that the killing was done intentionally. In addition to the factual basis given by the State at the plea hearing, the information in the PSI shows that Sims went to purchase a gun from Star for $150 and that Martin and Warren told Sims that the price for the firearm was too cheap and they were concerned that Star was setting Sims up to get robbed. Sims indicated to Martin and Warren that he was not worried about being robbed and Martin then saw that Sims had a gun on him. Martin and Warren went with Sims to meet Star and Sims got in the back seat of the vehicle that Star and Phelps were in. Sims saw the gun he intended to buy and indicated he had the $150 to purchase it. Star told Sims that he was not getting the gun and was not leaving with his money either. The PSI indicates that when Star turned his head away from looking into the backseat, Sims started shooting Star and then shot Phelps. Sims' counsel also stated at the plea hearing that Star pulled a gun on Sims and that was what caused Sims to shoot the victims. Star had three gunshots inflicted to his head

and Phelps had one gunshot wound to his head. Both victims were shot at close range while Sims was in the backseat of the same vehicle as the victims.

We conclude that the factual basis was sufficient to show that the killing was done intentionally and supports the charge of second degree murder. Accordingly, it cannot be said that Sims' plea was not made freely, intelligently, voluntarily, and understandingly.

Sims' first assignment of error is without merit.

*Excessive Sentence.*

Sims next assigns that his sentences imposed by the trial court are excessive. He makes three separate arguments in this regard. Sims first contends that based on Neb. Rev. Stat. § 29-2204(5) (Reissue 2016), the trial court could have disposed of the use of a deadly weapon offense pursuant to the Nebraska Juvenile Code, instead of ordering a sentence of incarceration based on the sentencing guidelines and ordering that the sentence run consecutive to the other sentences. Section 29-2204(5) provides for alternative dispositions for juveniles in adult court:

> Except when the defendant is found guilty of a Class IA felony, whenever the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

The statute provides that the court "may" sentence a juvenile under the Juvenile Code instead of imposing the penalty provided for the crime. It allows the court to use its discretion in determining whether to apply the statute to a given situation. In the present case, the court had already evaluated whether Sims' case should be transferred to juvenile court and concluded that it should not. In coming to that decision, the court noted that Sims was 15 years' old at the time of the crimes and had had significant contact with the juvenile system for two and a half years before this crime occurred. The court found that the services provided by the juvenile court were unsuccessful in the past and were not sufficient for Sims at this time. Based on Sims' prior criminal history, the nature of the crimes at issue, and the court's previous denial of the motion to transfer to juvenile court, we cannot say that the court abused its discretion in not applying § 29-2204(5) in the present case.

Sims next argues that the trial abused its discretion in sentencing him because it mistakenly pronounced the parole eligibility and release date. The trial court stated that the effect of the three sentences running consecutively was a sentence of 70 to 120 years. It further stated that under the sentencing guidelines, Sims would be eligible for parole in 35 years and that he would be mandatorily released in 60 years. Sims argues that because the sentence for use of a deadly weapon, a Class IC felony, carries a mandatory minimum of 5 years, the first 5 years would not be reduced by good time. He contends that this would result in two and one half years being added to the parole eligibility date and mandatory discharge date, which the trial court did not take into account.

Section 29-2204(6)(b) provides that in the event of a discrepancy between the statement of the minimum limit of the sentence and the statement of parole eligibility, the statement of the minimum limit controls the calculation of the offender's term. See *State v. Russell*, 291 Neb. 33,

863 N.W.2d 813 (2015). The meaning of a sentence is, as a matter of law, determined by the contents of the sentence itself. *Id.* A trial judge's incorrect statement regarding time for parole eligibility is not part of the sentence and does not evidence ambiguity in the sentence imposed. *Id.* Section 29-2204 provides the same rule regarding any conflict between the statement of maximum limit of the sentence and the advisement of mandatory release--the former controls. *State v. Russell, supra.*

Sims was sentenced to an indeterminate sentence on each charge, and the minimum and maximum limits were clearly fixed. The sentences were not unclear and not misleading. The trial court's misstatement regarding time for parole eligibility and mandatory release was not part of the sentence and does not create ambiguity in the sentences imposed. We conclude that there is no abuse of discretion in the court's pronouncement of the parole eligibility and mandatory release date.

Sims next argues that his sentences are excessive because the trial court failed to take into account that the shootings occurred as a result of Sims' being provoked by the victims. He contends this factor should have substantially mitigated his sentence.

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Sims was convicted of two counts of second degree murder, Class IB felonies. See Neb. Rev. Stat. § 28-304 (Reissue 2016). A Class IB felony is punishable by a maximum sentence of life imprisonment and a minimum sentence of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). For each conviction of a Class IB felony, Sims received a sentence of 30 to 50 years' imprisonment. These sentences are within the statutory limits.

Sims was also convicted of use of a deadly weapon (firearm) to commit a felony, a Class IC felony. See Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016). A Class IC felony is punishable by a maximum sentence of 50 years' imprisonment and requires a mandatory minimum sentence of 5 years' imprisonment. See § 28-105. Sims received a sentence of 10 to 20 years' imprisonment on the use of a deadly weapon (firearm) to commit a felony offense. This is within the statutory limits. Therefore, Sims' sentences will not be disturbed absent an abuse of discretion. See *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018).

At sentencing, the trial court stated it had considered the entire PSI, the evidence received at the juvenile transfer hearing, and the statements made at the sentencing hearing. Both Sims and trial counsel addressed the trial court and were able to highlight any issues they wished to be considered. Sims' counsel discussed the provocation theory and the circumstances that led to the shootings. There is no indication in the record that the trial court considered any inappropriate factors in determining the sentences it imposed. Sims has not shown an abuse of discretion by the trial court. Accordingly, Sims' assignment of error in regard to his sentences is without merit.

*Ineffective Assistance of Counsel.*

Finally, Sims argues that his trial counsel was ineffective. Specifically, Sims argues that his counsel was ineffective in failing to object or make a motion to withdraw his plea because he was not advised that the plea waived his right to appeal the denial of the motion to transfer to juvenile court, was not advised that he could compel witnesses on his behalf, and the factual basis did not support a conviction for second degree murder.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

We determine that the record is sufficient to address Sims' allegations of ineffective assistance of counsel on direct appeal. As previously discussed, Sims was adequately informed of his constitutional rights before he entered his plea, he did not waive his right to challenge the denial of his motion to transfer on direct appeal, and the factual basis was sufficient to support second degree murder. Accordingly, Sims' trial counsel's performance was not deficient and Sims' ineffective assistance of counsel claim is without merit.

## CONCLUSION

We conclude that Sims' plea was entered knowingly, intelligently, voluntarily, and understandingly and with a sufficient factual basis, that his sentences were not excessive, and that his trial counsel was not ineffective. Accordingly, Sims' convictions and sentences are affirmed.

AFFIRMED.