IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. ROMERO-MIJANGOS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ARMANDO D. ROMERO-MIJANGOS


Filed May 28, 2024.    No. A-23-784.


Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Ian Aleksander Osborn, Deputy Hall County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Armando D. Romero-Mijangos appeals his plea based convictions for conspiracy to commit a felony, a Class IC felony; two counts of attempted first degree assault on a peace officer, each a Class II felony; and two counts of attempted use of a deadly weapon to commit a felony, each a Class II felony. On appeal, Romero-Mijangos contends that the district court erred in considering a victim impact statement offered in the case of a co-defendant when imposing Romero-Mijangos' sentence and erred in imposing an excessive sentence. He also asserts he received ineffective assistance of counsel. Upon our review, we affirm Romero-Mijangos' convictions and sentences.

## BACKGROUND

In October 2022, the State filed an information charging Romero-Mijangos with 14 felony offenses as a result of his role in a plan to fire gunshots at or near police officers who were

- 1 -

attempting to serve a warrant at a residence. The charges included, conspiracy to commit a felony, a Class IC felony; two counts of attempted first degree assault on a peace officer, each a Class II felony; unlawful discharge of a firearm near a vehicle, a Class IC felony; unlawful discharge of a firearm from or near a vehicle, a Class IC felony; two counts of terroristic threats, each a Class IIIA felony; transfer of a handgun to a juvenile, a Class III felony; and six counts of use of a deadly weapon to commit a felony, each a Class IC felony. Subsequently, in June 2023, the State amended the information to charge Romero-Mijangos with only five counts: conspiracy to commit a felony, a Class IC felony; two counts of attempted first degree assault on a peace officer, each a Class II felony; and two counts of attempted use of a deadly weapon to commit a felony, each a Class II felony.

Pursuant to a plea agreement with the State, Romero-Mijangos agreed to plead guilty or no contest to the five charges alleged in the amended information in exchange for the State having dismissed the other nine charges. Under the plea agreement, there was no restriction as to what sentencing recommendation the State could make.

At the plea hearing, upon the district court's inquiry, Romero-Mijangos indicated that no one had threatened him or made promises to compel him to plead guilty or no contest to the amended charges. In addition, he affirmed that he understood both the constitutional rights he was waiving by pleading to the charges and the possible consequences of his pleas. Romero-Mijangos informed the district court that he had been provided with sufficient time to discuss the case with his attorney and that together they had discussed his options. Romero-Mijangos entered pleas of no contest to the charges contained in the amended information.

The State provided a factual basis for Romero-Mijangos' plea. On August 5, 2022, law enforcement officers in Grand Island, Nebraska, were attempting to serve a search warrant on a residence located near the intersection of Louise and Elm Streets. While officers were positioned outside of the residence, awaiting the arrival of the search warrant, they heard two gunshots in rapid succession very close by. Officers believed that the gunshots had come from a nearby alley. They heard a vehicle speeding away from that vicinity immediately after hearing the gunshots.

Once the area was cleared and the search warrant arrived, officers entered the residence. They found two residents, one of whom had two guns in his waistband. A large bag of marijuana was also located in plain sight. The content of one of the resident's cell phones was downloaded and reviewed. It revealed that the residents had conspired with other individuals to "let off a shot" to distract the officers waiting to serve the search warrant so that the residents could escape out the back door. Further investigation revealed that Romero-Mijangos was involved in this conspiracy. In fact, it was Romero-Mijangos who supplied the gun for the shooting. The gunman, Favion Lara, fired two gunshots, one at each investigator waiting in front of the residence.

The district court found that Romero-Mijangos understood the nature of the charges against him and the possible sentences; that his no contest pleas were made freely, voluntarily, knowingly, and intelligently; and that the factual basis supported his plea. The court then accepted Romero-Mijangos' no contest pleas to conspiracy to commit a felony; two counts of attempted first degree assault on a peace officer; and two counts of attempted use of a deadly weapon to commit a felony. The court ordered that a presentence investigation report (PSR) be completed prior to sentencing and scheduled the sentencing hearing for September 2023.

At the sentencing hearing, Romero-Mijangos' defense counsel argued in favor of an aggregate sentence totaling 10 to 20 years' imprisonment, noting the seriousness of the offenses, but also the mitigating factors present in Romero-Mijangos' circumstances. To the contrary, the State argued in favor of a lengthy prison sentence, noting Romero-Mijangos' ongoing failure to accept responsibility for his actions, the high risk of re-offense he posed; and the serious and violent nature of the charged offenses.

Ultimately, the district court sentenced Romero-Mijangos to 30 to 50 years' imprisonment on his conviction for conspiracy to commit a felony and to 15 to 30 years' imprisonment on each of his convictions for attempted first degree assault of a peace officer and attempted use of a deadly weapon to commit a felony. The four sentences for attempted first degree assault of a peace officer and attempted use of a deadly weapon to commit a felony were ordered to be served concurrent to one another, but consecutive to the sentence for conspiracy to commit a felony, such that Romero-Mijangos received an aggregate sentence of 45 to 80 years' imprisonment. In imposing the sentence, the district court highlighted its rationale as follows:

> Today, in reviewing the [PSR] and considering all of the factors that are necessary for me to consider, I accept that you have been involved in these actions and, at a minimum, that you have not been wanting to contest your involvement in these actions through your no contest plea. What is not in dispute is that a firearm was discharged in a residential neighborhood when officers were present.
>
> The evidence that was presented in the [PSR] illustrates, from the police reports that were attached thereto, that those shots were fired in the direction of law enforcement officers with the intention to try to disrupt some sort of law enforcement action.
>
> As the State just pointed out, you are responsible for the part you play in your actions. Criminally, you are responsible for the part you play in a criminal conspiracy. The part that you played, according to the evidence that has been presented through the [PSR], is that but for your actions, the gun never would have been involved. You could have had a trial to dispute this, but you chose not to.
>
> Accordingly, when combining that information with your high LS/CMI score of 31 and the fact that a lack of responsibility is being shown generally by your attitude, the fact that the Court does not find credible that you were just in the wrong place at the wrong time, anything less than the sentence the Court is about to give you would depreciate the seriousness of the offense and promote disrespect for the law.

Romero-Mijangos appeals here.

ASSIGNMENTS OF ERROR

Romero-Mijangos, represented by a different attorney than the one who represented him at the time of his pleas and sentencing, assigns and argues three errors on appeal. First, he asserts that the district court erred in considering a victim impact statement offered in the case of a co-defendant when imposing Romero-Mijangos' sentence. Second, he asserts that the district court imposed an excessive sentence. Finally, he asserts that he received ineffective assistance of trial counsel when counsel failed to object to the court's consideration of the victim impact statement offered in the separate case.

STANDARD OF REVIEW

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

ANALYSIS

*Sentencing Court's Consideration of Victim Impact Statement Offered in Separate Case.*

In a separate district court case, 17-year-old Favion Lara pled to the same five charges as Romero-Mijangos pled to as a result of his involvement in the conspiracy to distract officers from serving the search warrant. See *State v. Lara*, 315 Neb. 856, 2 N.W.3d 1 (2024). Specifically, Lara was convicted of being the person who actually shot at the law enforcement officers. *Id*. As a part of Lara's plea agreement with the State, the State agreed to recommend an aggregate sentence of 15 to 20 years' imprisonment. *Id*. Ultimately, though, Lara was sentenced by the district court to an aggregate sentence of 45 to 80 years' imprisonment. *Id*. This sentence was imposed by the same district court judge that would later sentence Romero-Mijangos to the same aggregate sentence. *Id*.

At Lara's sentencing hearing, the State offered into evidence a victim impact statement authored by one of the law enforcement officers who Lara shot at. *Id*. As a part of the statement, the officer asked the district court to consider exceeding the sentence recommended by the State, and sentencing Lara "closer to the max sentence." *Id*. at 863, 2 N.W.3d at 9. The district court received the victim impact statement in its entirety as an opinion of one of the victims. *Id*.

In Lara's appeal to the Nebraska Supreme Court, he argued that the court erred in receiving the officer's statement because it resulted in a breach of the plea agreement. *Id*. Lara contended that the officer was a state actor and that, as such, he was bound by the State's plea agreement with Lara, including the recommended sentence. *Id*. In its opinion, the Supreme Court found that Lara had failed to prove the officer's remarks in the victim impact statement had resulted in a breach of the plea agreement. *Id*. The court affirmed Lara's sentence. *Id*.

Notably, during Romero-Mijangos' sentencing hearing, the State did not offer the officer's victim impact statement into evidence. In fact, the only mention of the statement at the sentencing hearing came from defense counsel who stated during her argument, "The State has decided not to offer the statement that they offered into Mr. Lara's hearing." Besides this offhand comment, there is no other reference to the victim impact statement or to Lara's case in our record. Arguably,

however, the district court judge was aware of the victim impact statement at the time of Romero-Mijangos' sentencing, as the judge had previously sentenced Lara.

On appeal, Romero-Mijangos alleges that the district court must have considered the victim impact statement in sentencing him and that such consideration prejudiced him and deprived him of due process. Based upon our review of the record in this case, we find no merit to Romero-Mijangos' argument. Despite Romero-Mijangos' speculation to the contrary, there is nothing in the record to indicate that the court considered the victim impact statement when determining his sentence. The court explicitly indicated:

> The Court has had the opportunity to review the [PSR]. I have considered all of the necessary factors. I have considered your age, your mentality, your education and experience, your social and cultural background, your past criminal record as well as the period of law-abiding conduct that you have had, the motivation for this offense, the nature of this offense as well as the nature of any violence involved in the commission of this offense.

Nowhere does the court indicate that it considered any victim impact statement and no such statement is included in our record. As such Romero-Mijangos' argument on this point fails.

Moreover, even if the victim impact statement had been included, there would be no error in the court considering it. We note that in Romero-Mijangos' case, the plea agreement did not include any limitation on the recommendation the State could give regarding sentencing. As a result, it is not clear exactly how Romero-Mijangos would have been prejudiced had the district court considered the victim impact statement, asking the court to sentence Lara close to the maximum allowable sentence. This is particularly true when the statement referred solely to Lara's actions and not to Romero-Mijangos' role in the conspiracy.

*Excessive Sentence Claim.*

Romero-Mijangos next asserts that the district court imposed an excessive sentence because the court improperly weighed and considered the relevant sentencing factors. He argues that such a lengthy aggregate prison sentence as was imposed in this case was not warranted. Upon our review, we find no abuse of discretion in the district court's sentencing determination.

The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). Romero-Mijangos was convicted of conspiracy to commit a felony, a Class IC felony. A Class IC felony is punishable by a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). The district court sentenced Romero-Mijangos to 30 to 50 years' imprisonment. Such sentence is clearly within the statutory limits. Romero-Mijangos was also convicted of four Class II felonies, each punishable by 1 to 50 years' imprisonment. *Id*. The district court sentenced him to 15 to 30 years' imprisonment for each count. Such sentences are also clearly within the statutory limits.

Because Romero-Mijangos' sentences are within the statutory limits, we review the district court's sentences for an abuse of discretion. In reviewing whether an abuse of discretion occurred

during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

The district court ordered Romero-Mijangos to participate in a PSR prior to sentencing. That PSR indicates that at the time of sentencing, he was 20 years old and unemployed. He had graduated from high school and also had a 1-year-old child. According to reports from law enforcement, Romero-Mijangos was a "verified" gang member. However, during his interview with probation, he denied any gang involvement.

Romero-Mijangos has a fairly lengthy history in the juvenile court dating back to 2015, when he was only 12 years old. As a juvenile, he was adjudicated for disturbing the peace; driving without an operator's license (two times); terroristic threats, carrying a concealed weapon; possession or use of drug paraphernalia; being a minor in possession; and driving under the influence of alcohol. He was sentenced to a period of probation on five occasions, that probation was revoked on two of those occasions. As an adult, Romero-Mijangos was convicted of attempted possession of a controlled substance (methamphetamine) and obstructing a peace officer in April 2021. He was sentenced to 60 days in jail for those offenses. In April 2022, he was found guilty of having an improper car title. He was sentenced to 30 days in jail.

The PSR contains information about multiple rules violations Romero-Mijangos committed while in jail awaiting disposition of the current charges. Such rules violations included setting a fire in his jail cell. Testing conducted by the probation officer revealed that Romero-Mijangos poses a very high risk of re-offense. He did not accept responsibility for his involvement in the conspiracy to shoot at the law enforcement officers, simply explaining that he was just getting a ride from someone and ended up at the "wrong place at the wrong time."

Despite Romero-Mijangos' assertions to the contrary on appeal, the record demonstrates that the district court sufficiently considered all of the relevant sentencing factors in making its sentencing determination. The court provided a lengthy rationale for its determination, which we detailed above. Considering all of the relevant sentencing factors and the applicable law, we conclude that the sentences imposed by the district court were not excessive and that the court did not abuse its discretion when it sentenced Romero-Mijangos within the statutory limits.

*Ineffective Assistance of Counsel Claim.*

Romero-Mijangos alleges as his third assignment of error that his retained trial counsel who represented him through the time of the plea and sentencing hearings was ineffective for failing to object to the district court's consideration of the victim impact statement authored by a law enforcement officer which was offered during the sentencing hearing of the shooter, Lara. As we discussed above, this victim impact statement was not offered at Romero-Mijangos' sentencing

hearing and, other than a fleeting reference to that statement made by defense counsel, the statement was not addressed at Romero-Mijangos' sentencing hearing.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

Here, Romero-Mijangos has failed to demonstrate that his trial counsel's actions with regard to the victim impact statement were in any way deficient. The victim impact statement was not offered at Romero-Mijangos' sentencing hearing. Instead, it was offered at the sentencing hearing of the shooter, Lara. As we discussed above, while the same district court judge that sentenced Lara also sentenced Romero-Mijangos, and thus would have been privy to the information contained in the victim impact statement, there is no indication in our record that the district court judge considered such information when sentencing Romero-Mijangos. And, even if the victim impact statement would have been offered, it would not have violated the plea agreement. Accordingly, there was nothing for defense counsel to object to during Romero-Mijangos' sentencing hearing. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023).

CONCLUSION

For the reasons stated herein, we affirm Romero-Mijangos' convictions and sentences. We find no indication that the district court considered any improper evidence when making its sentencing determination, nor do we find that the ultimate sentencing determination was an abuse of discretion. Romero-Mijangos' trial counsel was not ineffective in failing to object to evidence not offered during the sentencing hearing.

AFFIRMED.