STATE OF NEBRASKA, APPELLEE, V.
ROBERT MCDERMOTT, APPELLANT.
677 N.W.2d 156

Filed April 9, 2004.    No. S-02-1489.

Gregory C. Damman, of Blevens & Damman, for appellant.

Jon Bruning, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.
Under the terms of a plea agreement, Robert McDermott entered a guilty plea to possession of a controlled substance with intent to deliver in violation of Neb. Rev. Stat. § 28-416 (Reissue 1995). He appeals from an order denying his motion for post-conviction relief.

## FACTS

In 1997, McDermott was charged in Seward County with a single count of possession of a controlled substance with intent to deliver in violation of § 28-416. A Seward County public defender was appointed as his attorney. McDermott was subsequently arraigned in the district court for Seward County on an amended information charging him with one count of possession of a controlled substance with intent to deliver in violation of § 28-416, and with being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1995).

McDermott appeared with counsel in district court on July 21, 1998, and, under the terms of a plea agreement, entered a guilty plea to the possession with intent to deliver charge in exchange for dismissal of the habitual criminal charge, as well as an agreement by the State not to file any additional charges. On August 18, a sentencing hearing was held. The court asked trial counsel if he had had an opportunity to review the presentence report and inquired as to whether he had any additions, corrections, or deletions he wished to make. Counsel submitted a handwritten statement from McDermott for inclusion in the presentence report but did not object to the accuracy of any of the information compiled by the probation officer. The district court sentenced McDermott to a term of incarceration of $6\frac{2}{3}$ to 20 years in an institution under the jurisdiction of the Nebraska Department of Correctional Services. Counsel filed a timely direct appeal on the sole ground that McDermott's sentence was excessive. That appeal was summarily affirmed by the Nebraska Court of Appeals on February 5, 1999. See *State v. McDermott*, 8 Neb. App. xxix (No. A-98-949, Feb. 5, 1999).

On August 25, 2000, McDermott, represented by new counsel, filed a motion for postconviction relief alleging ineffective assistance of counsel. McDermott alleged that his presentence report erroneously included four felony convictions from Bakersfield, California, between 1982 and 1992 which were attributed to him but were actually committed by a different person. McDermott contended that his trial counsel performed deficiently by failing to adequately discuss McDermott's criminal history with him prior to sentencing. He alleged that if he had been given the opportunity to review the presentence report, he would have brought the incorrect information to the attention of his trial counsel and the court.

McDermott also alleged that his plea was not "knowingly, intelligently, and voluntarily" entered because he was not informed by his counsel that his prior criminal record would not support a habitual criminal conviction. McDermott alleged that a true report of his felony criminal history at the time of sentencing would have revealed that he had only two prior felony convictions, one of which was a felony solely because of repetition and therefore could not be counted as a felony for the purposes of the habitual criminal statute. McDermott alleged that if he had known that there was no basis for conviction under the habitual criminal statute, he would not have entered a plea and would have insisted upon a jury trial.

On October 3, 2000, the district court denied McDermott's motion without an evidentiary hearing. On appeal, the Court of Appeals determined that McDermott's motion for postconviction relief contained "factual allegations which, if proved, constitute an infringement of McDermott's right to effective assistance of counsel under the federal Constitution, and the records and files do not affirmatively show that McDermott is entitled to no relief." *State v. McDermott*, No. A-00-1126, 2002 WL 452189 at *3 (Neb. App. Mar. 26, 2002) (not designated for permanent publication). The Court of Appeals therefore remanded the matter for an evidentiary hearing.

Trial counsel, McDermott, and Shane Stutzman, the probation officer responsible for compiling McDermott's presentence report, each testified at an evidentiary hearing conducted on August 26, 2002. Trial counsel testified that he had a specific

recollection of discussing the presentence report with McDermott for approximately 20 minutes prior to the sentencing hearing. Trial counsel testified that during that meeting, he "would have told [McDermott] what needed to be proven to make a habitual criminal charge effective and — and whether or not those types of offenses would have been on his record." He stated that he was not aware of any errors in the presentence report prior to sentencing. Trial counsel testified that the State's agreement not to file additional charges as part of the plea bargain conferred a benefit on McDermott because there was "at least some potential" that other charges could have been filed.

McDermott testified that it had been his intention to go to trial but that he had accepted the plea agreement because his trial counsel told him that if convicted on the charge of possession with intent to deliver, his record "would support an habitual criminal finding and it would add an additional 10 to 60 years on top of whatever [he] got for the drug charge." McDermott testified that the State's offer not to file any additional charges did not affect his decision to accept the plea agreement because he was not worried about other charges. McDermott confirmed that he met with his trial counsel for 10 to 15 minutes prior to his sentencing, but stated that he was not shown a copy of the presentence report.

Stutzman testified that she met personally with McDermott to review his prior criminal record, and McDermott's testimony confirms that this meeting occurred. Stutzman admitted that in compiling McDermott's presentence report, she erroneously included four felony convictions involving another person. Stutzman also testified, however, that even without these convictions, her sentencing recommendation to the court would have been the same because of McDermott's extensive criminal record and history of substance abuse.

On September 16, 2002, the State filed a motion to supplement the record with newly discovered evidence. The evidence consisted of a copy of a December 1989 conviction for felony burglary that had not appeared in McDermott's original presentence report. On October 8, over the objection of McDermott's counsel, the newly discovered evidence was received as exhibit 23. Exhibit

23 does not indicate what sentence McDermott received as a result of this conviction.

On December 9, 2002, the district court filed a judgment denying and dismissing with prejudice McDermott's amended motion for postconviction relief. The district court concluded that McDermott had failed to show that he was prejudiced by the erroneous inclusion of the four felony convictions because he failed to prove how the result would have been different had they not been included. Regarding McDermott's plea agreement, the court found that McDermott had received a benefit by "avoiding the risk and uncertainty of a habitual criminal enhancement hearing" and the "potential for filing other felony charges" and that therefore, the plea agreement was not illusory. McDermott filed this timely appeal, and we moved the case to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

McDermott assigns, restated, that the district court erred in determining that he was not deprived of effective assistance of counsel and therefore denying his motion for postconviction relief. He argues that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney (1) failed to adequately review the presentence report with him and failed to determine if the report accurately set forth his criminal record, (2) failed to determine whether his criminal record would support a habitual criminal charge and advised him to enter an illusory plea agreement dismissing that charge, and (3) failed to advise him that his prior criminal record would not support a habitual criminal charge, thereby resulting in his guilty plea to the controlled substance charge not being entered knowingly, intelligently, and voluntarily.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Ray*, 266 Neb. 659, 668 N.W.2d 52 (2003); *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003).

ANALYSIS

The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1995), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights. *State v. Parmar*, 263 Neb. 213, 639 N.W.2d 105 (2002); *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000). McDermott's postconviction claims are based solely upon alleged deprivation of his constitutional right to effective assistance of counsel. Normally, a voluntary guilty plea waives all defenses to a criminal charge. However, in a postconviction action brought by a defendant convicted because of a guilty plea, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *State v. Gonzalez-Faguaga, supra*; *State v. Bishop*, 263 Neb. 266, 639 N.W.2d 409 (2002). Because McDermott was represented by his trial counsel on direct appeal, he is not procedurally barred from asserting a postconviction claim alleging ineffective assistance of counsel. See, *State v. Gonzalez-Faguaga, supra*; *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

Under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Buckman, supra.* The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Id.*; *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).

To demonstrate that his or her counsel's performance was deficient, a defendant must show that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. *State v. Gonzalez-Faguaga, supra*; *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002). In an evidentiary hearing for postconviction relief, the postconviction trial

judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. See, *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993). In this case, there was a conflict between the testimony of McDermott and that of his trial counsel concerning their discussions about the presentence report prior to sentencing. The district court expressly found that counsel's testimony was "far more credible" than McDermott's. Therefore, we consider defense counsel's performance as described in his testimony.

McDermott's first assignment of error challenges the adequacy of trial counsel's performance in reviewing the presentence report and in failing to detect the inaccuracy noted above. The criminal history set forth in the presentence report included more than 70 entries. Stutzman testified that she met with McDermott personally to review his prior criminal record in the course of preparing the report. Trial counsel testified that he went over the report with McDermott for approximately 20 minutes prior to the sentencing hearing. During this meeting, no errors in the presentence report were discovered or brought to counsel's attention. Based upon this evidence, trial counsel's failure to detect errors in the presentence report cannot be considered deficient performance under the standard set forth above. In the absence of any indication by McDermott that the recitation of his prior criminal history was inaccurate, it was reasonable for counsel to rely upon the report. To conclude otherwise would impose an undue burden on criminal defense attorneys to independently verify the information presented in a presentence report, as compiled by the probation officer pursuant to Neb. Rev. Stat. § 29-2261 (Reissue 1995). Because we conclude that counsel's performance in this regard was not deficient, we need not reach the second prong of the *Strickland* test. McDermott's first assigned error is without merit.

We note that McDermott makes no claim that the inclusion of the erroneous information in the presentence report in and of itself deprived him of due process. In addition, the district judge made no specific reference to this information at the time of sentencing, but, rather, agreed with McDermott's position, as set forth in the lengthy written statement which he submitted to the

court, that he was a drug addict and would benefit from a sentence which would give him access to "drug [r]e-hab and/or counseling" and medical facilities and services.

With respect to his second assignment of error, McDermott contends that his counsel performed deficiently in not determining whether McDermott's criminal record would support a habitual criminal charge and in advising McDermott to enter into what he claims was an illusory plea agreement dismissing that charge. A habitual criminal is defined by § 29-2221, which provides in relevant part:

> (1) Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years[.]

In *State v. Chapman*, 205 Neb 368, 370, 287 N.W.2d 697, 698 (1980), this court limited those felonies which could be used under § 29-2221, holding that "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of prior felonies that enhance penalties under the habitual criminal statute." Subsequently, this court stated:

> [W]e regard the holding in *State v. Chapman* . . . as resting upon two general principles: (1) A defendant should not be subjected to double penalty enhancement through application of both a specific subsequent offense statute and a habitual criminal statute and (2) the specific enhancement mechanism contained in Nebraska's [driving under the influence] statutes precludes application of the general enhancement provisions set forth in the habitual criminal statute.

*State v. Hittle*, 257 Neb. 344, 355, 598 N.W.2d 20, 29 (1999) (holding felony conviction for driving under suspended license may not be used to trigger application of habitual criminal statute

because penalty has been enhanced by virtue of defendant's prior violations of other provisions within same statute).

In this case, McDermott's criminal record, as summarized in the presentence report at the time of sentencing, contained at least two felonies in addition to the four which were erroneously included. The first was a 1989 conviction in California for petty theft with priors which resulted in a 16-month jail sentence. The second was a 1994 conviction in California for possession of heroin which also resulted in a 16-month jail sentence.

McDermott argues that under *Chapman*, he could not have been found to be a habitual criminal because his 1989 conviction was elevated to felony status based solely on his prior petty theft convictions. The State contends that *Chapman* is distinguishable on several grounds and that thus, it cannot be categorically said that McDermott's record would not have supported a habitual criminal conviction. The State argues first that *Chapman* is distinguishable in that it "was decided as a matter of state statutory interpretation which is inapplicable to . . . McDermott's California convictions." Brief for appellee at 12. It is undisputed that McDermott's misdemeanor petty theft charge was enhanced to a felony by virtue of his previous offenses of that same nature. The State argues, however, that unlike *Hittle* and *Chapman*, McDermott's petty theft charge was not enhanced by virtue of a specific statute with a "specific enhancement mechanism," but, rather, McDermott was convicted under the California general penal code which specifically allows the elevation of misdemeanors to felony offenses through repetition. Brief for appellee at 13.

The State also argues that § 29-2221 does not require two prior "felonies." Rather, it states that the defendant has to have been "twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each." § 29-2221(1). Based on the plain meaning of the statutory language, the State contends that any conviction—misdemeanor or felony—which results in a sentence of over a year would satisfy the plain meaning of "crime" for the purposes of § 29-2221(1). Accordingly, the State contends that McDermott's 1989 conviction, whether designated as a felony or misdemeanor, arguably satisfies this statutory requirement.

The State has thus demonstrated nonfrivolous arguments distinguishing *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), which could have been made in support of the habitual criminal charge against McDermott, had the charge not been dismissed as a part of the plea agreement. In addition, McDermott's record now contains evidence of a third prior felony conviction for burglary. Despite the fact that there is no indication in the record of the disposition in that case, it is possible that additional information regarding the disposition of the burglary conviction, or any of the other 46 "unknown" dispositions in McDermott's presentence report, would have been discovered if the State had pursued the habitual criminal charge. McDermott conceded in his testimony that his prior misdemeanor convictions in California could have involved a sentence of incarceration for up to 1 year. The record thus reflects at least the possibility that McDermott could have been convicted as a habitual criminal had he not entered into the plea agreement and that his attorney advised him of this possibility. In addition, the plea agreement protected McDermott against the filing of additional charges in Nebraska. Accordingly, we agree with the district court that McDermott did not meet his burden of proving that the plea agreement was illusory or that trial counsel's advice with respect to the plea agreement was constitutionally deficient.

■ In his final assignment of error, McDermott argues that counsel's deficient performance resulted in his guilty plea not being "entered knowingly, intelligently, and voluntarily because he was not aware, nor was he advised by his attorney, that his prior criminal record would not support [a] habitual criminal charge." A defendant who pleads guilty upon the advice of counsel may attack only the voluntary and intelligent character of the plea by showing that the advice received was not within the range of competence demanded of attorneys in criminal cases. *State v. Zarate*, 264 Neb. 690, 651 N.W.2d 215 (2002), citing *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), and *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973). Because we conclude that the performance of McDermott's counsel in advising him regarding the guilty plea was not constitutionally deficient, it follows that the plea was made knowingly, intelligently, and voluntarily.

## CONCLUSION

Finding no error in the denial of postconviction relief, we affirm the judgment of the district court for Seward County.

AFFIRMED.