IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. SPIEHS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ANDREW A. SPIEHS, APPELLANT.


Filed April 14, 2020.    No. A-19-797.


Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge, on appeal thereto from the County Court for Lancaster County: MATTHEW L. ACTON, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and Megan Kielty for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Andrew A. Spiehs appeals his conviction and sentence in the county court for Lancaster County, which was affirmed by the district court for Lancaster County. Spiehs was convicted of theft of lost or mislaid property and sentenced to 3 months' jail time. We affirm.

## BACKGROUND

On October 2, 2018, Spiehs was charged with theft of lost or mislaid property pursuant to Neb. Rev. Stat. § 28-514 (Reissue 2016), a Class III misdemeanor. The complaint alleged that on November 13, 2017, Spiehs did come into control of property of another that he knew to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient and with intent to deprive the owner thereof, he failed to take reasonable measures

to restore the property to a person entitled to have it. Spiehs was arraigned on October 4, 2018, and he entered a plea of not guilty. The Lancaster County Public Defender's office was appointed to represent him during that same hearing, but it is unclear whether counsel actually appeared with Spiehs when he entered his not guilty plea at the arraignment.

On October 5, 2018, the public defender declared a "conflict of interest" and a local attorney was appointed to represent Spiehs on October 9. At a docket call held on October 31, after meeting his client for the first time, substitute counsel made a request for a jury trial, both orally and in writing. The request for a jury trial was denied since it was made out of time. The court advised counsel the demand should have been made on or before October 19.

A bench trial was held on March 6, 2019, in the county court for Lancaster County. The evidence established that Marcus Kee used a self-checkout register at the south Lincoln Walmart at noon on November 13, 2017. After completing his transaction Kee dropped his wallet on the floor in the checkout lane and, without realizing his loss, departed the store and returned to his home. Upon arriving home Kee realized his wallet was missing so he checked his bank computer records to see if any of his debit or credit cards had been used to make any purchases without his knowledge or consent. Kee discovered one of his bank cards had been used twice at a department store north of the Walmart between the time he left the Walmart and his arrival at his home. Kee called the Lincoln Police to report the unauthorized use of one of his bank cards.

Officer Jonathan Dickman was dispatched to Kee's home to take a statement. Kee reported his wallet contained his driver's license, his social security card, bank debit card, and several credit cards. Kee said all the debit and credit cards had his name and account numbers stamped on them and the driver's license included his address. Dickman then went to the Walmart and contacted the loss prevention department. Dickman was able to secure surveillance video using the time stamp from Kee's receipt which clearly showed Kee's wallet on the floor and Kee departing the store without realizing he had left the wallet behind.

The surveillance video went on to show another customer spotting the wallet on the floor and after retrieving it, handing the wallet to a passing Walmart employee. The Walmart employee intended to deliver the wallet to the manager in the self-checkout area of the store but Spiehs reached out to the employee and gestured indicating the wallet belonged to him. The videotape shows the employee handing the wallet to Spiehs without opening it or confirming that the driver's license identified Spiehs. The videotape shows Spiehs putting the wallet into his pocket. Dickman then proceeded to the department store where the credit card was used in order to try to identify who used the card.

The department store gave Dickman videotape showing two teenaged females making the unauthorized purchases. One of the females was identified as Olivia Gordon. Dickman was able to go back in time on the Walmart surveillance videotape to locate Gordon and Spiehs together in the Walmart. Dickman had reached a dead end in his efforts to identify Spiehs so he posted an image from the Walmart videotape to "Crime Stoppers," a "public forum" where citizens are asked to call the police if they are able to identify the actors in the images.

On June 1, 2018, Detective Sergeant John Walsh received a Crime Stoppers tip from Spiehs' parole officer who identified Spiehs on the basis of his visible tattoos. Walsh compared the Crime Stoppers photos with jail and booking photos on the Nebraska Criminal Justice Information System and concluded the tattoos on his hands and the left side of his neck were

similar to the Crime Stoppers photos. Walsh then contacted Spiehs at his home on September 7, 2018.

Walsh testified Spiehs initially claimed he gave the wallet to the Walmart employee. Walsh testified he advised Spiehs that was not true because the videotape showed the employee giving the wallet to Spiehs. Walsh testified Spiehs then claimed to have been high on methamphetamine at the time and he "thought the wallet was his so he took it." Walsh testified Spiehs told him that at some point Spiehs realized the wallet was not his so he gave the wallet to Gordon.

The county court found the State had met its burden of proof and entered a verdict of guilty. Sentencing was held on March 27, 2019, and Spiehs was sentenced to 3 months in the Lancaster County jail. Spiehs appealed his conviction and sentence to the district court for Lancaster County.

Spiehs' lawyer and the county attorney appeared at a hearing before the district court for the purpose of establishing a briefing schedule. Spiehs' lawyer put the court on notice that he intended to raise two issues in his appeal. First, that there was insufficient evidence to sustain the conviction, and second, that the county court erred in denying his request for a jury trial. After reviewing the evidence presented to the county court the district court issued an order concluding any rational trier of fact would have found the State met its burden of proof on every element of the crime charged, beyond a reasonable doubt, and that it is abundantly clear that Spiehs is guilty as charged. The district court specifically noted that Spiehs had abandoned and withdrawn his other assigned error related to the county court's denial of his request for a jury trial. Spiehs gave timely notice of his appeal from the district court's order to this court. The briefs, if any, submitted to the district court, are not a part of this record.

## ASSIGNMENTS OF ERROR

In this direct appeal, Spiehs assigns two errors. First, that the district court erred in finding sufficient evidence to support his conviction, and second, that Spiehs was denied his right to effective assistance of counsel.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

To prevail on a claim of ineffective assistance of counsel, the appellant must show that counsel's performance was deficient, and that this deficient performance actually prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

A counsel's performance is deficient when the counsel's performance does not equal that of a lawyer with ordinary training and skill in the area. *State v. McDermott*, 267 Neb. 761, 677 N.W.2d 156 (2004). In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

Spiehs was charged with violation of § 28-514(1) which provides:

A person who comes into control of property of another that he or she knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient commits theft if, with intent to deprive the owner thereof, he or she fails to take reasonable measures to restore the property to a person entitled to have it.

The Walmart employee testified she received the wallet from a customer who found it on the floor in the checkout lane. The employee testified she intended to deliver the wallet to the manager of the self-checkout department but Spiehs reached out to her and said, "Oh, that's mine." Walsh testified when he interviewed Spiehs, Spiehs acknowledged taking control of the wallet as the Walmart employee handed it to him. Both Walsh and Dickman testified the surveillance videotape clearly shows Spiehs receiving the wallet from the Walmart employee and putting it in his pocket. Walsh testified Spiehs told him when he discovered the wallet was not his, he gave it to Gordon.

Spiehs argues there is insufficient evidence to conclude that he knew the wallet was lost or mislaid when he took control of it. But at the time he realized it was not his wallet, he gave it to Gordon instead of making efforts to return it to Walmart or to the rightful owner. The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding an incident. *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000) (sufficient evidence to support conviction of § 28-514(1) when defendant sold a telephone found on the street contradicting claim she believed property to be inoperable and abandoned). Whether or not Spiehs knew the wallet was lost or mislaid was a question for the county court as the trier of fact, and the county court rejected Spiehs' claim. And the district court correctly affirmed the judgment since it does not reweigh the evidence, pass on the credibility of witnesses or settle disputes of fact. After viewing the evidence in the light most favorable to the prosecution, we agree with the district court that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

### INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant's trial counsel is different from his or her counsel on direct appeal, as is the case here, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. See *State v. Sinkey*, 303 Neb. 345, 929 N.W.2d 35 (2019). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.*

In his second assignment of error Spiehs assigns "appellant was denied his right to effective assistance of counsel under the sixth amendment to the United States Constitution and Article 1,

Sec. 11 of the Nebraska State Constitution." Brief for appellant at 9. We believe Spiehs' generalized claim of ineffective assistance of counsel fails to properly specify deficiencies in his trial lawyer's performance and, as a result, his claim is not properly before us for appellate review. The Nebraska Supreme Court explained in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019):

> [W]hen raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by the appellate court. It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance.

The specific claims of deficient performance were first noted in Spiehs' discussion section rather than the assignments of error section of his brief. Therefore, we find that Spiehs has not properly assigned his ineffective assistance of trial counsel claim, and we do not consider its merits on this appeal.

CONCLUSION

We affirm the district court's order that there was sufficient evidence to convict Spiehs of theft of lost or mislaid property. We also find that Spiehs has not sufficiently assigned as error his claim of ineffective assistance of trial counsel.

AFFIRMED.