IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSEPH J. MARK, APPELLANT.

Filed October 19, 2021.    Nos. A-21-125, A-21-126.

Appeals from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Caitlin R. Lovell, of Johnson & Mock, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Joseph J. Mark appeals from his plea-based convictions and sentences in two separate cases which have been consolidated on appeal. In case No. A-21-125, Mark asserts his plea of no contest was not entered freely, intelligently, voluntarily, and understandingly. In both cases, A-21-125 and A-21-126, Mark challenges his sentences as excessive and asserts his trial counsel was ineffective in four respects. For the reasons that follow, we affirm Mark's convictions and sentences.

BACKGROUND

On August 26, 2019, Mark's then 15-year-old biological daughter (Victim 1) reported numerous incidents of sexual abuse perpetrated by Mark. The ensuing investigation revealed 367 photographs and 127 videos portraying at least 37 separate incidents of sexual abuse committed against Victim 1 from February 2016 to August 2019. The investigation also revealed 13

photographs and 1 video portraying at least one incident of sexual abuse committed against Mark's then 11-year-old biological daughter (Victim 2), one video portraying at least one incident of sexual abuse committed against Mark's then 13-year-old biological son (Victim 3), and multiple videos portraying sexual contact between Victim 1 and her then 15-year-old boyfriend recorded without consent.

In connection with the above incidents of abuse, the State filed two criminal cases against Mark, alleging a total of 15 counts. The cases were consolidated and the parties reached a global plea agreement according to which Mark pleaded no contest to six counts and the State dismissed the remaining nine counts. In case No. A-21-125, Mark pleaded no contest to one count of sexual assault on a child in the first degree, a Class IB felony, in violation of Neb. Rev. Stat. § 28-319.01 (Reissue 2016). In case No. A-21-126, Mark pleaded no contest to three counts of visual depiction of sexually explicit conduct, Class ID felonies, in violation of Neb. Rev. Stat. §§ 28-1463.03 and 28-1463.04(2) (Reissue 2016); one count of attempted sexual assault on a child in the first degree, a Class II felony, in violation of Neb. Rev. Stat. §§ 28-319.01(1) and 28-201(4)(a) (Reissue 2016); and one count of first degree sexual assault, a Class II felony, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016).

In March 2020, Mark appeared before the district court for Douglas County to enter his pleas as above. The district court examined Mark, ensuring he understood his constitutional rights, and advised him of the possible sentences for each charge. With respect to the charge of first degree sexual assault on a child, the district court asked Mark, "[d]o you understand that the maximum possible sentence for Count 2 in Case No. CR 19-3203, which is a Class IB felony, is a mandatory minimum of 15 years and a maximum of life imprisonment?" Mark replied, "Yes."

The court found beyond a reasonable doubt that Mark understood the nature of the charges and possible sentences, that Mark's no contest pleas were made freely, intelligently, voluntarily, and understandingly, and that there was a factual basis for Mark's pleas. Accordingly, the court found Mark guilty of the above six counts and set the case for sentencing.

The court convened for sentencing in July 2020. The court stated it had received and reviewed the presentence investigation report (PSI) along with several letters attached thereto. The court heard argument from both parties, as well as statements from Mark himself, Victim 1, and the mother of Mark's victims. Upon review of all the above, and in express consideration of the statutory factors, the court sentenced Mark to a total of 80 to 110 years of incarceration.

## ASSIGNMENTS OF ERROR

Mark assigns that the district court erroneously advised him of the minimum penalty for sexual assault of a child in the first degree, such that his plea on that count was not entered freely, intelligently, voluntarily, and understandingly.

Mark also assigns that the district court imposed excessive sentences on all six counts and that his trial counsel was ineffective in four respects.

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in a case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

Mark first assigns that the district court erroneously advised him of the minimum penalty for sexual assault of a child in the first degree, such that his plea on that charge was not entered freely, intelligently, voluntarily, and understandingly. To support a finding that a plea of guilty or no contest has been entered freely, intelligently, voluntarily, and understandingly, the record must establish that the defendant knew the range of penalties for the crimes charged. *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015). A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in a case of an abuse of discretion. *State v. Wilkinson, supra.*

Under § 28-319.01(2), "[s]exual assault of a child in the first degree is a Class IB felony with a mandatory minimum sentence of fifteen years in prison for the first offense." In contrast, Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2018) provides that the range of penalties for a Class IB felony is a minimum of 20 years and a maximum of life imprisonment. In *State v. Lantz*, 21 Neb. App. 679, 842 N.W.2d 216 (2014), this court addressed the apparent conflict between § 28-319.01(2) and § 28-105(1). In *Lantz*, the State proposed we construe the statutes to impose a 20-year minimum term of imprisonment, the first 15 of which are "mandatory" and thus not subject to good time credit. Rejecting the State's interpretation, we reasoned as follows:

> When there is a conflict between statutes, we are guided by the principle that to the extent there is a conflict between two statutes, the specific statute controls over the general. . . . In this circumstance, the Legislature has made a specific provision that the offense of first-offense first degree sexual assault of a child, even though classified as a Class IB felony, carries a mandatory minimum sentence of 15 years' imprisonment. This specific statute controls over the general statute regarding sentences providing for a 20-year minimum term of imprisonment.

*State v. Lantz*, 21 Neb. App. at 704, 842 N.W.2d at 236-37 (internal citations omitted).

In *State v. Russell, supra*, the Nebraska Supreme Court addressed a nearly identical dispute as to the proper interpretation of the "mandatory minimum" penalty under § 28-319.01(2). Consistent with our decision in *Lantz*, the State argued that § 28-319.01 imposes a minimum sentence of 15 years, the entirety of which is mandatory and thus not subject to good time credit. The defendant, on the other hand, adopted the State's prior position from *Lantz* that the minimum term of imprisonment is 20 years, the first 15 of which are mandatory. Citing our decision in *Lantz*,

the Supreme Court also rejected this interpretation and explicitly held "that the range of penalties for sexual assault of a child in the first degree, first offense, under § 28-319.01(2), is 15 years' to life imprisonment." *State v. Russell*, 291 Neb. at 41, 863 N.W.2d at 820.

In this case, the district court correctly advised Mark that the charge of first degree sexual assault of a child, first offense, carried a mandatory minimum penalty of 15 years' imprisonment and a maximum penalty of life imprisonment. Mark argues the present case is distinguishable from *Russell* as follows:

> In *Russell*, the district court advised the defendant the potential penalty for sexual assault of a child in the first degree was a "a minimum of twenty years' incarceration and a maximum of life," but did not mention a fifteen-year mandatory minimum. . . . Here, the district court did mention the fifteen-year mandatory minimum, but failed to advise the defendant of the general twenty-year minimum. The district court's error amounts to an additional five years in minimum penalties of which Defendant was not aware at the time of entering his plea or sentencing. . . . Because the record is void of any mention of a twenty-year minimum penalty, it is apparent Defendant did not understand the possible penalty for sexual assault of a child in the first degree.

Brief for appellant at 15 (internal citations omitted).

Mark misunderstands the court's holding in *Russell*. Mark appears to be advocating for precisely the interpretation which was rejected by the Supreme Court in *Russell* and this court in *Lantz*. Mark's argument erroneously suggests that both the 15-year mandatory minimum under § 28-319.01(2) and the 20-year minimum under § 28-105(1) are applicable to a charge of first degree sexual assault of a child. To the contrary, *Russell* and *Lantz* make clear that § 28-319.01(2) is the controlling law and the possible range of penalties is a mandatory minimum of 15 years' imprisonment and a maximum of life imprisonment. Accordingly, the district court correctly advised Mark of the range of penalties for first degree sexual assault of a child. Moreover, the record demonstrates that Mark understood the range of penalties as advised by the court. As such, it was not an abuse of discretion to accept Mark's plea on that count.

*Excessive Sentences*.

Mark next assigns that the district court imposed excessive sentences on each charge in both cases. The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

As discussed above, Mark faced 15 years to life imprisonment for first degree sexual assault of a child, and the court sentenced Mark to 30 to 35 years' imprisonment on that count. Mark faced 3 to 50 years' imprisonment on each of three counts of visual depiction of sexual conduct, and the court sentenced Mark to 5 to 10 years' imprisonment on each count. Mark faced 1 to 50 years' imprisonment for attempted sexual assault of a child, and the court sentenced Mark to 15 to 20 years' imprisonment. Mark faced 1 to 50 years' imprisonment for first degree sexual assault, and the court sentenced Mark to 20 to 25 years' imprisonment. Because each of the

sentences is within the statutory limits, we review the district court's sentences for an abuse of discretion.

In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra.* Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id.*

We begin by observing that the district court reviewed the PSI, along with numerous letters attached thereto. The PSI indicated a high risk of recidivism, and the probation officer who conducted the presentence investigation made the following observations:

> [Mark] was open and honest about the fact that he sexually assaulted his children, as previously stated, there were times [Mark] seemed to make minimizing statements regarding the actions he exhibited during these offenses. He seemed to want to point towards [Victim 1] and [Victim 3] as being instigators of the sexual activity that began in the family home. . . . [Mark] was previously convicted of crimes against his own children, specifically Child Abuse by Neglect, in 2011. . . . [Mark] was given probation for those convictions. [Mark's] antisocial behavior since that time has only increased and has now led to him sexually assaulting his own children. While [Mark's] sexually assaultive actions may have stopped, the trauma these children will have to deal with will be ongoing . . . the unspeakable things [Mark] said and did to his own children has caused unbelievable harm, but that harm will haunt these children in their thoughts and their dreams, in their emotions, and in their actions for the rest of their lives.

The probation officer ultimately recommended that Mark be sentenced to periods of incarceration which reflect the seriousness of the crimes committed and harm caused.

In challenging his sentences, Mark points to his comments at the sentencing hearing "regarding his remorse and contrition, admitting his failure as a father . . . acknowledg[ing] the damage done to his children . . . [and] acknowledg[ing] his own experience with physical abuse[.]" Brief for appellant at 17. Mark argues that in light of these "statements regarding his mentality and social and cultural background, an aggregate sentence of 80 to 110 years was unreasonable." *Id.*

However, we note that Mark's was not the only voice heard at the sentencing hearing. Mark's ex-wife, who is also the mother of Mark's victims, gave a statement in which she questioned Mark's justifications for his actions and expressed doubt as to his remorse. She stated as follows:

> [Mark] has made poor choices as a husband, a father, and as a human being. His actions have caused considerable harm and damage to his victims. They have lost their innocence, their sense of safety, and their ability to trust those close to them. While you state you have changed and you want another chance, unfortunately, I can't give you that.

Victim 1 also gave the following statement:

Over the years, my father has done some terrible things to me, never once was I comfortable doing the things he asked me to do. The longer time went on, the more I wanted to stop doing the things that he wanted me to do. He wouldn't because he had more to teach me and thought if he didn't teach me, I would be a failure of a wife not being able to please my future husband, which, by the way, I never believed. Eventually, by the end of my freshman year of high school, in May of 2019, he escalated to rape. It then continued throughout the summer until I told my mom I wanted it to stop. She took action to protect me and my siblings, and now I feel safe.

In addition to this statement, the court noted that Victim 1 also wrote a letter in which she described her home as "a nightmare" which "never in a million years would I wish to go through again." The letter went on to say, "I told my story not only to protect myself, but my sisters too . . . [s]omeone had to put a stop to him, and I'm glad that I could."

Finally, the court also heard argument from the prosecutor, who opined that Mark "is one of the most dangerous people . . . to the most vulnerable in our society that I would say I have dealt with during my time as a prosecutor." The prosecutor further argued as follows:

[Mark] is full of excuses. He is full of arrogance and pride. He is a danger to any child that he has access to. He is manipulative, as he sits here claiming how difficult it is to imagine your own child suffering here today. We have video evidence of him perpetrating sexual assaults on his own child as she cries and yells out for him to stop, begging for her biological father to not have sex with her or make her perform sex acts on him. So he doesn't have to imagine his own child suffering. He subjected her and the others to that suffering. Not trying to avoid it or ignore living through knowing that he did so, he recorded it so he could watch it later and relive it. This isn't a man who tries to avoid watching his children suffer. This is a man who revels in watching his children suffer.

Prior to announcing the sentences, the court stated the following:

Although [Mark] was very open in his interview with the probation office, as well as in his letters to the court, and in his statement in court today, it's apparent to the court that [Mark] clearly lacks insight as to his motivations to engage in this -- in these incredibly selfish behaviors. He was the adult, and the children were not in any way, shape, or form responsible for the crimes he perpetrated against them.

It is not the function of an appellate court to conduct a de novo review and a reweighing of the sentencing factors in the record. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). Rather, an appellate court need only conclude the district court's reasoning for the sentences are not clearly untenable and do not unfairly deprive the defendant of a substantial right and just result. *Id.* While the statutory factors should instruct a sentencing court, they do not comprise a mathematical formula that must be rigidly implemented. *Id.*

Nothing in the record indicates that the district court failed to account for Mark's statements regarding his mentality and social and cultural background. To the contrary, the court specifically acknowledged Mark's openness both at the hearing and during the presentence

investigation. However, the record also contains substantial countervailing evidence supporting the imposition of lengthy prison sentences. The district court's reasoning was not clearly untenable and did not deprive Mark of a substantial right or just result. Accordingly, the aggregate sentence of 80 to 110 years' imprisonment was not an abuse of discretion, and we affirm Mark's sentences on all six counts.

*Ineffective Assistance of Counsel.*

Mark next assigns, through new counsel, that his trial counsel was ineffective in four respects. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Otherwise the issue will be procedurally barred. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *Id.*

In general, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Lowman, supra.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). When the claim is raised in a direct appeal the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). The entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable, and trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* An appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel. *State v. Lowman*, supra.

Mark first assigns trial counsel was ineffective in failing to obtain a psychosexual or mental health evaluation prior to sentencing. Mark points to Neb. Rev. Stat. § 29-2261(3) (Reissue 2016), which provides in pertinent part that "[t]he presentence investigation and report shall include, when available . . . the offender's . . . mental condition, . . . and any other matters that the probation officer deems relevant or the court directs to be included."

Mark argues that "[b]ecause a [PSI] 'shall' include information regarding a defendant's mental condition, a lawyer with ordinary training and skill in criminal law would have obtained either a mental health evaluation or psychosexual evaluation prior to sentencing." Brief for appellant at 20. Mark asserts that without such an evaluation, "the record is void of any mention of [Mark's] mental health diagnoses." *Id.* However, somewhat confusingly, Mark explicitly cites to the record to demonstrate he "was diagnosed with adjustment disorder with anxiety and depression, and attention deficit hyperactive disorder." *Id.*

Indeed, the PSI reflects that Mark underwent a psychological evaluation in 2011 which resulted in the above diagnoses. The psychologist who conducted the 2011 evaluation made the following observations:

This overall profile suggests a man with an arrogant sense of self-worth, a talent for feigning dignity, and confidence, indifference to the welfare of others, and a facile or deceptive social manner. There do appear to be tendencies to charm and exploit others and to extract social recognition and consideration without assuming reciprocal responsibility. Criticism or condemnation is either dismissed as coming from jealous inferiors or is used to justify his own less than commendable inclinations. He is likely to be skillful in the ways of social influence and adept at using the goodwill of others. He may feel treated unfairly and may be easily provoked to anger.

The probation officer opined that the psychologist's observations "seem quite accurate at this point in time." Moreover, the probation officer wrote, "[i]t is significant to note that [the psychologist] stated, '[i]t is likely that environmental management, psychopharmacologic treatment, and behavior modification will have little value in effecting change in [Mark's] symptoms as his symptoms are long-standing.'"

In addition to the 2011 evaluation, the presentence investigation for the present cases included a number of diagnostic and screening tools. Mark took a Substance Abuse Questionnaire which showed him to be in the "problem risk category" for antisocial behavior. Mark ultimately scored in the "very high risk range" for antisocial pattern, and the probation officer noted that Mark "has an extensive history of antisocial behavior." Mark also scored in the "high risk range" on the Sex Offender Treatment, Intervention, and Progress Scale.

Despite all this information which was ostensibly considered by the district court, Mark maintains that only an additional psychosexual or mental health evaluation "would have allowed the district court to consider [Mark's] mental condition at sentencing, as required by [§ 29-2261(3)]." Reply brief for appellant at 2. In other words, Mark contends that trial counsel's failure to obtain an additional psychosexual or mental health evaluation effectively precluded the court from considering his mental condition. We disagree that the court was unable to consider Mark's mental condition based on the record as it stands. We find the record contains ample information regarding Mark's mental condition. Indeed, the court prefaced its announcement of the sentences by saying, "it's apparent to the court that [Mark] clearly lacks insight as to his motivations . . . ," evidencing an express consideration of Mark's mental condition.

We turn then to the specific question of trial counsel's failure to obtain additional psychosexual or mental health evaluations. Mark reported to the probation officer that he asked trial counsel about obtaining a psychosexual evaluation, but counsel responded "[w]hy would you risk having a positive result of being a pedophile by getting an evaluation?" While Mark did not think the evaluation would determine he was a pedophile, trial counsel believed an evaluation would only harm Mark's case. In the context of this case, the decision to refrain from obtaining additional evaluations is a justifiable trial strategy which we will not second guess on appeal.

Moreover, we have previously held that § 29-2261 gives the district court discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed. See *State v. St. Cyr*, 26 Neb. App. 61, 916

N.W.2d 753 (2018), *disapproved on other grounds, State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). In that case, we reasoned the statute does not provide a defendant can or should request such further evaluations, such that "[t]rial counsel cannot be deficient for failing to request evaluations that the court itself could have ordered, but in its discretion deemed unnecessary." *State v. St. Cyr*, 26 Neb. App. at 74, 916 N.W.2d at 763-64. Accordingly, the record establishes that trial counsel was not ineffective for failing to obtain additional evaluations, and that assignment is without merit.

Mark next assigns that trial counsel was ineffective for failing to advocate effectively at the sentencing hearing. Specifically, Mark alleges trial counsel failed to represent his case "with persuasive force and zealous advocacy," in violation of Neb. R. Prof. Con. § 3-501.3, cmt. 1. Brief for appellant at 21. We observe that trial counsel presented a lengthy argument at the sentencing hearing. In summary, counsel stated the following:

> Therefore, we would argue, in light of his lack of significant record, lack of danger to anyone other than his own children, suggest that a proper sentence for each charge is the minimum in each charge to be run concurrently. This will allow the children to mature, receive help, and to render punishment for the abuse of power that [Mark] in his weakness, insecurity, and isolation felt the need to exercise.

Mark contends counsel's argument was ineffective because it failed to mention Mark's mental health diagnoses, and it contained "mischaracterizations" such as describing Mark as "small in spirit and low in achievement." Brief for appellant at 22. Mark argues that an effective trial counsel "would have avoided such mischaracterizations, instead focusing on [Mark's] lack of criminal history, mental health diagnoses and remorse." *Id.* Mark asserts that trial counsel's failure to do so "precluded the court" from taking these factors into consideration. *Id.* However, the record demonstrates otherwise.

First, the record demonstrates that counsel did discuss, however briefly, Mark's lack of criminal history and remorse. However, even if counsel had wholly failed to discuss all of the above factors, such would not have "precluded" the court from considering them because information pertaining to Mark's criminal history, mental health diagnoses, and remorse was incorporated into the PSI reviewed by the court.

Moreover, the record establishes that trial counsel's argument was well within the bounds of reasonable trial strategy and tactics. Acknowledging the court's understandable skepticism regarding Mark's suggestion that the videos and pictures of his crimes were "more documentary than for prurient interests[,]" counsel sought to shift the court's attention from the heinous details of Mark's crimes to the "deep-seated" insecurities that drove Mark to commit them. Counsel then discussed how Mark's childhood trauma and the pressures of society had led to Mark adopting a distorted sense of identity. In the context of this case, the record establishes that counsel was not ineffective for failing to advocate effectively at the sentencing hearing, and that assignment of error is without merit.

Mark next assigns trial counsel was ineffective for failing to review discovery and the PSI with him prior to sentencing. With respect to discovery, Mark alleges in his brief that "[i]nstead of personally consulting with [Mark]--explaining potential legal, technical and tactical matters in a way that only a licensed attorney can--trial counsel sent an investigator in counsel's place to

review discovery." Brief for appellant at 23. Mark asserts that without an opportunity to review discovery with a licensed attorney, he was "effectively denied . . . any ability to make an informed decision regarding the resolution of this case." *Id*.

We note that the record is void of any evidence relating to whether or how discovery was reviewed with Mark. However, even assuming Mark's allegations to be true, he cannot demonstrate prejudice. The bulk of the evidence in this case consisted of undisputed videos and photographs documenting Mark's crimes. In that context, the mere fact that Mark reviewed discovery in the presence of an investigator as opposed to a licensed attorney does not establish a reasonable likelihood of a different outcome. Accordingly, trial counsel was not ineffective for failing to personally review discovery with Mark.

With respect to the PSI, Mark alleges in his brief that "trial counsel failed altogether to review the PSI[,]" such that "trial counsel deprived [Mark] of any opportunity to review or correct potential mistakes in the PSI." Brief for appellant at 23. We note there was an exchange between the court and Mark's trial counsel indicating that counsel had reviewed the PSI and did not have any "objections, corrections, or additions" thereto. However, the record is void of any evidence regarding Mark's opportunity or desire to review the PSI prior to sentencing.

It is true that a defendant has a qualified right to review his or her PSI, and the defendant may, with his or her attorney, examine the presentence report subject to the court's supervision. *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006). However, the defendant waives that qualified right by not notifying the trial court that he or she has not personally reviewed the report and that he or she wishes to do so. *Id.* The failure to object to the presentence report precludes a defendant from challenging it on appeal. *Id.*

In *State v. Moyer, supra*, the Supreme Court was faced with the question of whether the defendant's trial counsel was ineffective for failing to disclose the contents of the PSI prior to sentencing. The court distinguished *Moyer* from the earlier case of *State v. McDermott*, 267 Neb. 761, 677 N.W.2d 156 (2004). In *McDermott*, the defendant complained about trial counsel's failure to detect inaccuracies in the PSI. However, the record included testimony from trial counsel which established that counsel had reviewed the PSI with the defendant for approximately 20 minutes prior to sentencing, and the defendant failed to bring any of the errors to trial counsel's attention. Thus, the court determined counsel's review of the PSI was not ineffective.

The *Moyer* court observed that unlike *McDermott*, "we do not have the benefit of a record containing evidence of any conversations that took place between [the defendant] and trial counsel regarding the contents of the [PSI]." *State v. Moyer*, 271 Neb. at 786-87, 715 N.W.2d at 575. As such, the court determined the record was insufficient to evaluate the claim of ineffective assistance. *Id.* After *Moyer*, the court addressed a similar claim in *State v. Blaha*, 303 Neb. 415, 428-29, 929 N.W.2d 494, 505 (2019), wherein the court made the following observations:

> Here, the record is void of any statement by [the defendant] or trial counsel that [the defendant] either reviewed the [PSI] or wished to review the [PSI]. Nor is there any statement by [the defendant] that he had the opportunity to review the [PSI]. Similar to *Moyer*, we do not have the benefit of a record that contains any conversation about the contents of the presentence investigation report between [the defendant] and trial counsel or the probation officer. Therefore, we conclude that the record is insufficient to address the claim on direct review.

As in *Moyer* and *Blaha*, the record before us is void of any statement by Mark or trial counsel that Mark reviewed the PSI or wished to review the PSI. Without the benefit of a record that contains evidence of conversations or statements regarding Mark's access to the PSI, we conclude the record is insufficient to address that claim on direct appeal.

Mark lastly assigns trial counsel was ineffective for inducing his plea with a promise of a specific sentence. Mark argues he "labored under the assumption any plea agreement would secure concurrent sentences." Brief for appellant at 24. Mark points to an exchange which took place at his arraignment where the plea agreement was read into the record. When reading the plea agreement, the prosecutor specifically stated, "[t]here is no agreement on sentencing." The court asked Mark if he understood the plea agreement, to which Mark responded, "Almost." The record then indicates that Mark had an off-the-record conversation with trial counsel. Mark argues, "[t]his off-the-record discussion between [Mark] and trial counsel during the plea hearing illustrates [Mark's] belief that any sentence imposed would run concurrently, not consecutively." Brief for appellant at 24. However, confined as we are to the record before us, an off-the-record conversation does not illustrate anything, let alone Mark's subjective belief at the time of the hearing.

Moreover, the record otherwise establishes that Mark's plea was not induced by any promise of a specific sentence. After the off-the-record conversation between Mark and trial counsel, the court again asked if Mark understood the plea agreement as read. Mark responded, "Yes." The following exchange between Mark and the court then took place:

> THE COURT: At the time of sentencing I will not be bound by any recommendation of the prosecutor, your attorney or anyone else. I alone will decide what sentence to impose. Do you understand this?
>
> [MARK]: Yes.
>
> . . . .
>
> THE COURT: Sir, other than your plea agreement, has anyone made any promise to you that causes you to plead no contest?
>
> [MARK]: No.
>
> THE COURT: Has anyone told you or led you to believe that if you entered a plea of no contest you would receive probation or be given a lighter sentence or in any way be rewarded for pleading no contest?
>
> [MARK]: No.
>
> THE COURT: Have you received any threats, inducements or assurances of leniency by anyone regarding this plea of no contest?
>
> [MARK]: No.

Accordingly, the record establishes that Mark's pleas were not induced by a promise of a specific sentence, and that assignment of error is without merit.

## CONCLUSION

We conclude the district court did not abuse its discretion in accepting Mark's no contest plea in case No. A-21-125. We also conclude that Mark's sentences are not excessive. We do not address Mark's claim that trial counsel was ineffective for failing to review the PSI with him prior to sentencing because the record is insufficient to do so on direct appeal. We find Mark's remaining

claims of ineffective assistance of counsel to be without merit. Accordingly, we affirm Mark's convictions and sentences.

AFFIRMED.