IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARTIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

REZZAIRE E. MARTIN, APPELLANT.

Filed March 1, 2022.    No. A-21-502.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Joseph Nigro, Lancaster County Public Defender, and Chelsie Krell for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Following his plea of no contest, Rezzaire E. Martin was convicted of aggravated first degree sexual assault. He was sentenced to 40 to 50 years' imprisonment. Martin argues that there was insufficient evidence for his conviction, his trial counsel provided ineffective assistance, and the sentence imposed was excessive. We affirm.

## II. STATEMENT OF FACTS

### 1. COUNTY COURT PROCEEDINGS

At the time of Martin's arrest, he was using the alias Travon E. Sandee. On January 31, 2020, the State filed a complaint in the county court for Lancaster County, charging Sandee with first degree sexual assault, a Class II felony, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016). Sandee's date of birth was listed as June 14, 1997.

- 1 -

On April 7, 2020, the State filed an amended complaint, correcting the defendant's name to Rezzaire E. Martin. The amended information listed aliases for Martin, including "Travon E. Sandee," and Martin's date of birth was listed as both December 9, 1990, and June 14, 1997.

## 2. DISTRICT COURT PROCEEDINGS

The case was subsequently bound over to the district court and on July 10, 2020, the State filed an information identical to the amended complaint filed on April 7 in county court, including Martin's aliases and two listed birthdates. On January 28, 2021, the State filed a motion to amend the information. At a hearing on February 24, the State moved to amend the information to charge Martin with first degree sexual assault of a child, a Class IB felony, in violation of Neb. Rev. Stat. § 28-319.01(3) (Reissue 2016). The court granted the State's motion to amend over Martin's objection, and the following day the State filed an amended information.

At the start of the preliminary hearing on February 26, 2021, the district court asked Martin what name he went by, and Martin answered, "Rezzaire Martin." The court clarified, "Mr. Martin, also known as Travon Sandee, is that right?" Martin answered, "Yes." An officer with the Lincoln Police Department then testified that when law enforcement arrested Martin, Martin was using the alias Travon Sandee. However, upon further investigation and fingerprint analysis, the officer was later able to identify the individual in custody as Martin.

Pursuant to a plea agreement, the State filed a second amended information in the district court on April 2, 2021, charging Martin with first degree sexual assault, a Class II felony, in violation of § 28-319(1)(a)(c). The information further alleged that the offense constituted a registerable offense which classified it as an aggravated offense pursuant to Neb. Rev. Stat. § 29-4001.01(1) (Reissue 2016). At a hearing on April 2, Martin pled no contest to the single count in the amended information. The following factual basis was provided by the State:

[T]he State believes if this matter would go to trial the evidence would show that the victim, [N.S.], met a man over Snapchat in . . . July of 2019. That man identified himself as Johnny Sandy to [N.S.].

On July 9th of 2019 [N.S.] and Johnny Sandy as she knew him, . . . met in person. On that day the man she knew as Johnny picked her up from her house in a white BMW and took her to a different house in Lincoln.

And [N.S.] would testify that while at that house her and Johnny Sandy engaged in sexual intercourse and his penis penetrated her vagina. Afterwards, Mr. Sandy took [N.S.] back to her father's house.

At the end of July of 2019 it was discovered by [N.S.'] guardian that she had met up with a strange man and made a report to the Lincoln Police Department. After interviewing [N.S.], [N.S.] was taken on a drive with her guardian and she was able to show them the house where Johnny had taken her in order to have sex.

Police searched the records for that house and discovered that it was an Air BnB rental and made contact with the owner of the Air BnB rental from whom they discovered that the person who had rented her house on July 19th, 2019, had gone by the name Trayvon Sandy.

A search of records showed that Trayvon Sandy did have a white BMW registered in his name. Some months later an officer with the Lincoln Police Department located the license plates that belonged to that BMW at a hotel in Lincoln.

Within that car were also paperwork that belonged to a Trayvon Sandy. Police entered the hotel and made contact with [Martin] and took him in for an interview. During that interview [Martin] gave his phone number . . .

This is the phone number that was given to [N.S.] by the person she knew as . . . Johnny when she had contact with him over Snapchat. Further, a search warrant to that phone number was conducted . . . to Sprint, and found records of [N.S.'] phone number . . . within his telephone records showing that their phones had had contact with each other.

[Martin] was arrested. After [Martin] was arrested, the National Center for Missing and Exploited Children made contact with the Lincoln Police Department indicating they believed the person who was in custody was actually Rezzaire Martin.

Fingerprints were compared between [Martin] and the known prints for Rezzaire Martin and Trayvon Sandy and it . . . was discovered that the person in custody was, in fact, Rezzaire Martin whose date of birth is December 9th of 1990.

[N.S.'] date of birth is April . . . 2005. During a deposition of [N.S.], she was shown a photograph of Rezzaire Martin and she, without hesitation, said that that was the man who had picked her up and had sexual intercourse with her on July 9th of 2019.

All of those events occurred in Lancaster County, Nebraska.

The district court accepted Martin's no contest plea and found him guilty of first degree sexual assault. The court also ordered a presentence investigation.

At a hearing held on May 20, 2021, the district court sentenced Martin to 40 to 50 years' imprisonment with credit for 420 days already served.

Martin appeals.

## III. ASSIGNMENTS OF ERROR

Martin assigns, restated, that (1) there was insufficient evidence to support his conviction of first degree sexual assault, (2) he received ineffective assistance of trial counsel, and (3) the district court imposed an excessive sentence.

## IV. STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether

the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

In his first assignment of error, Martin asserts that the district court erred in accepting his no contest plea because it was not supported by sufficient evidence.

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Blaha, supra*. A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). Accordingly, Martin has not waived his challenge to the factual basis. See *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016) (making it clear that defendant does not waive challenge to factual basis by entering plea, because sufficient factual basis is prerequisite for judicial finding that plea was entered into understandingly and voluntarily).

Martin was convicted of first degree sexual assault. Section 28-319 provides, in relevant part:

> (1) Any person who subjects another person to sexual penetration
>
> (a) without the consent of the victim,
>
> (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or
>
> (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

The plain language of § 28-319(1)(c) requires simply that the State prove that the defendant subjected the victim to sexual penetration and that the ages of the defendant and the victim fit within the statutory ranges. See *State v. Cramer*, 28 Neb. App. 469, 945 N.W.2d 222 (2020). As we have set forth previously, the State's factual basis indicated that in July 2019, N.S. and a man later determined to be Martin, engaged in penile-vaginal intercourse. Additionally, Martin was born in December 1990, making him 28 years old at the time of the incident. N.S. was born in April 2005, making her 14 years old at the time of the incident.

Martin argues that the "factual basis provided by the State did not adequately show that [Martin] was in fact the person responsible for the crimes alleged as there was much confusion regarding the identity of the person responsible . . ." Brief for appellant at 13. Martin points to the State's amended information listing a new name and birthdate for the individual charged, and asserts that there was not sufficient evidence to support his plea because of these "discrepancies in identity."

However, the State's factual basis shows that all of the identities involved in the case, including the name on the original information, were aliases used by Martin. Although police initially made contact with Martin while he was using an alias, fingerprint analysis determined that the individual police had in custody was Martin. Additionally, the phone number Martin gave to police during an interview matched the phone number that had been contacting N.S., and N.S. identified Martin from a photograph as the man who had sexual intercourse with her. After considering the record, we find there was a sufficient factual basis to show that Martin was the perpetrator and to meet the elements of first degree sexual assault under § 28-319(1)(c). We further note that at the preliminary hearing, Martin acknowledged that he had previously used the name of Travon Sandee, and the State adduced evidence establishing how Martin's true identity was determined after the offense.

Martin does not otherwise argue that his plea was not entered understandingly and voluntarily. The district court did not err either in finding that the factual basis was sufficient or in finding that Martin understandingly and voluntarily entered his plea. The court did not abuse its discretion in accepting Martin's plea. This argument fails.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

While generally a plea of no contest waives all defenses to a criminal charge, a defendant may challenge whether the plea was the result of ineffective assistance of counsel. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Martin claims his trial counsel was ineffective. He is represented on direct appeal by different counsel than the initial trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with

ordinary training and skill in criminal law. *Id*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*. With these governing principles in mind, we turn now to address Martin's claims that his trial counsel was ineffective.

### (a) Failure to Obtain Consent for Continuance Requests

Martin alleges that his trial counsel rendered ineffective assistance by requesting continuances without his consent. Martin argues that he was prejudiced because the continuances prolonged the amount of time he was in custody prior to a trial setting, thereby influencing his decision whether to enter into a plea agreement. He also argues that counsel's requests for continuances without his consent jeopardized his right to a speedy trial. The record reflects that Martin's trial counsel requested continuances on September 10 and November 18, 2020, and January 12, 2021. We address each continuance request below.

On September 10, 2020, Martin's trial counsel filed a motion to continue the jury docket call scheduled for September 16 to the next jury docket on November 18. Counsel represented to the court that it was the first time the matter had been on the docket list and that counsel for the State did not object to the continuance. The same day, the district court entered an order granting trial counsel's motion to continue the case to the next jury docket call on November 18.

At the jury docket call on November 18, 2020, Martin's trial counsel made an oral request to continue. Trial counsel informed the district court that the continuance was necessary because Martin was in the process of providing trial counsel with additional information, trial counsel needed to discuss a potential plea offer with Martin, and trial counsel was scheduling depositions. Trial counsel noted that she had discussed this second continuance request with Martin and that Martin was willing to be brought before the court to waive his speedy trial right if necessary. The State did not object to the continuance, and the court granted trial counsel's motion without a specific waiver by Martin.

On January 12, 2021, trial counsel again filed a motion to continue the case from the February 2021 jury term to the April jury term. Trial counsel's motion noted that a "necessary deposition" had to be rescheduled due to the attendees' recent exposure to COVID-19. The next day, the district court entered an order granting trial counsel's motion to continue the case to the April 2021 trial term.

On March 25, 2021, trial counsel filed a motion to withdraw upon Martin's request. At a hearing on March 26, Martin informed the court that one of the reasons he did not feel effectively represented was that, "they told me that I had . . . asked for a continuance . . . way earlier, when I never did." The court overruled trial counsel's motion to withdraw, finding that there had not been good cause shown for the removal of Martin's trial counsel.

Here, Martin does not assert that a speedy trial violation occurred or that his trial counsel was ineffective for failing to raise a violation. Although not exactly on point, we find the case of *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004), instructive. In that case, as part of his

motion for postconviction relief, McHenry alleged that his trial counsel rendered deficient performance in requesting a continuance despite the defendant's refusal to waive his speedy trial rights (resulting in the trial occurring after the 6-month statutory limit), and in failing to assert his right to a speedy trial or seek discharge on that ground. The Supreme Court affirmed the trial court's rejection of this claim, noting that Neb. Rev. Stat. § 29-1207(4)(b) excludes delays "resulting from a continuance granted at the request or with the consent of the defendant *or* his counsel." (Emphasis supplied). The Court noted the plain language of this statute anticipates a request for a continuance made solely by counsel. The Court in *McHenry* went on to note that while it had not addressed the specific issue of a defendant's refusal to consent to a continuance, it had recognized in prior caselaw that defense counsel's reasonable strategic decisions could effectively waive a defendant's statutory right to a speedy trial.

The Court in *McHenry* further reiterated that "except for such basic decisions as . . . whether to plead guilty, waive a jury trial, or testify in his or her own behalf, a defendant is bound by the tactical or strategic decisions made by his or her counsel." The Court concluded that defense counsel's request for a continuance in order to prepare for trial waived McHenry's statutory right to a speedy trial despite his objections to the continuance and defense counsel was not ineffective for failing to assert McHenry's right to a speedy trial or by failing to file a motion for discharge.

Here, the record is sufficient to show that counsel's requests for a continuance in order to receive additional information from Martin, to depose a necessary witness, and to consider a plea offer, were reasonable strategic decisions. We determine that trial counsel was not ineffective in requesting continuances of the trial.

(b) Failure to Interview Potential Witnesses

Martin next asserts that his trial counsel rendered ineffective assistance by failing to interview two potential witnesses: N.S.' father, who had knowledge of "inconsistencies in the alleged victim's account of the incident and in particular her timeline of events"; and Alyssa Shaw, who was in possession of a video that "would have pointed to another person being responsible for the crime . . . ." Brief for appellant at 15. Martin asserts that trial counsel's failure to interview these witnesses "influenced" his decision to enter a plea that he would not have if trial counsel had interviewed these witnesses. *Id.*

This claim of ineffective assistance of counsel is affirmatively refuted by the record. At the plea hearing, the district court asked Martin if his trial counsel had neglected to do anything Martin asked. Martin answered that his counsel had not. Martin agreed that he had told his counsel everything he knew about the case and that he was not aware of anything that could be helpful to him in the case that he had not talked to her about. Martin indicated that he was satisfied with the job his trial counsel had done. The court also asked Martin if he understood that by entering a plea, he would be waiving his right to present witnesses in his own defense. Martin answered that he understood he was waiving this right. Thus, Martin's responses at the plea hearing refute his allegations that his trial counsel neglected to contact witnesses at his request. See *State v. Barrera-Garrido,* 296 Neb. 647, 895 N.W.2d 661 (2017) (allegations of ineffective assistance which are affirmatively refuted by defendant's assurances at a plea hearing do not constitute basis for postconviction relief).

(c) Failure to Adequately Communicate With Martin

Martin finally asserts that trial counsel rendered ineffective assistance for failing to adequately consult with Martin regarding the potential outcomes of his plea. Martin claims that he was advised "he could expect a significantly less lengthy sentence of approximately three to four years imprisonment," which "impacted the calculus of his decision to enter a plea." Brief for appellant at 16. Although the record does not show what, if any, conversation took place between Martin and his trial counsel regarding the potential outcomes of his plea, the record on appeal is sufficient to affirmatively refute this claim.

At the plea hearing, Martin was informed by both the State and the court that the sentence for a conviction of aggravated first degree sexual assault was a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment, along with lifetime community supervision by the Office of Parole Administration and registration requirements under the Sex Offender Registry Act. Martin affirmatively stated in response to both advisements that he understood his charge and possible penalties. The district court then informed Martin that the court was not bound by any plea negotiations or recommendations by either counsel regarding the sentence to be imposed, and Martin stated that he understood that. The court also asked Martin whether he had been given any promises or representations of what the actual sentence would be, and Martin answered "No, Your Honor."

Because this claim of ineffective assistance of counsel is affirmatively refuted by Martin's assurances to the district court, this argument fails. See *State v. Barrera-Garrido, supra*.

3. EXCESSIVE SENTENCE

Martin was convicted of aggravated first degree sexual assault, a Class II felony. A Class II felony is punishable by a maximum of 50 years' imprisonment and a minimum of 1 year's imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Martin was sentenced to a term of 40 to 50 years' imprisonment. His sentence is within the statutory range. Nevertheless, Martin argues that the court abused its discretion in the sentence imposed.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Martin was 30 years old at the time of sentencing. His criminal history includes four convictions in Missouri: a sexual assault charge in 2010, for which he was sentenced to 5 years' imprisonment and 3 years' probation; a burglary charge in 2013, for which he was sentenced to 4 years' imprisonment and 5 years' probation; a resisting arrest charge in 2013, for which he was sentenced to 4 years' imprisonment and 5 years' probation; and a charge for failure to register as a sex offender in 2014. Martin's presentence investigation report notes that Martin has four active warrants related to these charges in Missouri. In Nebraska, Martin also has a carrying concealed weapons conviction in 2020, for which he was sentenced to 30 days in jail.

A "Level of Service/Case Management Inventory" assessed Martin as having a "high risk" to reoffend. Martin was also administered the "Vermont Assessment of Sex Offender Risk-2," which is designed to assess risk for sexual and violent recidivism. Martin scored "high risk" on this assessment and during his assessment interview, he denied having sexual contact with N.S. Martin also disclosed that when he was 19 years old, he had sexual intercourse with a teenager, resulting in her pregnancy. Police records indicate that Martin's arrest in 2010 for sexual assault was related to him having sexual intercourse with a 12-year-old. During the investigation, Martin initially denied having sexual contact with the 12-year-old, but DNA testing conclusively linked him to her pregnancy.

The district court stated that it reviewed the presentence investigation report, including letters attached to the report written by Martin, Martin's mother, Martin's sister, and N.S. The court noted that Martin is a "predator" as N.S. had identified herself as a 14-year-old and Martin had traveled from Missouri to Nebraska for "the sole and only purpose of having sex with this young girl." The court noted that it had considered all of the statutory sentencing factors as well as the nature and circumstances of the crime, and proceeded to sentence Martin as set forth previously.

In his brief, Martin details many mitigating factors such as his age, his difficult childhood, and the lack of force used in the commission of the crime. All of these mitigating factors were included in the presentence investigation report and reviewed by the district court.

Having considered the record and the relevant factors in this case, we cannot say that the district court abused its discretion in sentencing Martin. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## VI. CONCLUSION

For the reasons set forth above, we affirm Martin's conviction and sentence. In addition, we find Martin's claims of ineffective assistance of counsel fail, with the exception that we do not reach the merits of his argument that counsel was ineffective for requesting continuances without his consent.

AFFIRMED.